**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MINGXUE GUO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TYSON FOODS, INC., NOEL WHITE, DEAN BANKS, AND STEWART GLENDINNING,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff Mingxue Guo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Tyson Foods, Inc. ("Tyson" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

1

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Tyson securities between March 13, 2020 and December 15, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this district.

6.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be

false and misleading herein into this district, and Defendants solicited purchasers of Tyson securities in this district.

## PARTIES

7. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

8. Defendant Tyson is purportedly the largest U.S. producer of processed chicken, beef, pork, and protein-based products. The Company is incorporated in Delaware and its head office is located at 2200 Don Tyson Parkway, Springdale, AR 72762-6999. Tyson shares trade on the New York Stock Exchange ("NYSE") market under the ticker symbol "TSN."

9. Defendant Noel White ("White") was the Company's Chief Executive Officer ("CEO") prior to the beginning of the Class Period to October 2020.

10. Defendant Dean Banks ("Banks") has served as the CEO from October 2020 to the end of the Class Period.

11. Defendant Stewart Glendinning ("Wood") has served as the Company's Chief Financial Officer ("CFO") at all relevant times during the Class Period.

12. Defendants White, Banks, and Wood are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a)  directly participated in the management of the Company;

    (b)  was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

17. In December of 2019, a novel coronavirus strain, now called COVID-19, was detected in the city of Wuhan in Hubei province, China. Since then, the virus has spread to numerous countries.

18. COVID-19 was detected in the U.S. as early as January 20, 2020. Since then, the disease has gone on to claim more than 400,000 American lives.

19. On February 6, 2020, Tyson submitted a form 10-Q for the quarter ended December 28, 2019 ("3Q 2019 10-Q"). In the 3Q 2019 10-Q, Tyson states, "[W]e are monitoring the potential impact of the novel coronavirus outbreak to our global business." As such, as early as February 6, 2020, Defendants were aware of the risks that the coronavirus posed to their business.

## Materially False and Misleading Statements

20. On March 13, 2020, the Company published an 8-K current report supplementing risk factors disclosed in its annual report filed for the year ended September 28, 2019. The Company noted the "rapidly evolving coronavirus (COVID-19) outbreak" as an additional risk factor. In relevant part, the Company stated:

> "Pandemics or disease outbreaks, such as the novel coronavirus (COVID-19 virus), *may disrupt consumption and trade patterns, supply chains, and production processes*, which could materially affect our operations and results of operations.
>
> Pandemics or disease outbreaks such as the novel coronavirus (COVID-19 virus) *may depress demand for protein* because quarantines may inhibit consumption.
>
> \*   \*   \*
>
> *Our operations*, or those of independent contract poultry producers and producers who provide the live animals to our production operations, *may become limited in their ability to procure, deliver, or produce our food products* because of transport restrictions related to quarantines or travel bans.
>
> *Workforce limitations and travel restrictions resulting from pandemics or disease outbreaks and related government actions may impact many aspects of our business.*"

(Emphasis added.)

21. On May 4, 2020, Tyson filed a Form 10-Q for the fiscal quarter ended March 28, 2020 (the "2Q 2020 10-Q"). Attached to the 2Q 2020 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants White and Glendinning attesting to

the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

22. The 2Q 2020 10-Q stated, in relevant part, the following regarding Tyson's response to the coronavirus pandemic:

> "COVID-19 – We are monitoring and responding to the evolving nature of the global novel coronavirus pandemic ("COVID-19" or "pandemic") and its impact to our global business. *We formed an internal COVID-19 task force for the primary purposes of maintaining the health and safety of our team members, ensuring our ability to operate our processing facilities and maintaining the liquidity of our business.*
>
> \*   \*   \*
>
> Team Members – *The health and safety of our team members is our top priority.* To protect our team members, we implement safety measures recommended by the Centers for Disease Control and Prevention ("CDC") and the Occupational Safety and Health Administration ("OSHA") in our facilities and coordinate with other health officials as appropriate, including, but not limited to, checking the temperature of team members as they enter company facilities, restricting visitor access, increasing efforts to deep clean and sanitize facilities, *requiring the use of protective face coverings and making protective face coverings and other protective equipment available to team members, and encouraging team members who feel sick to stay at home through relaxed attendance policies and enhanced benefits.* We continue to explore and implement additional ways to *promote social distancing in our production facilities* by creating additional breakroom space and allowing extra time between shifts to reduce interaction of team members, as well as erecting dividers between workstations or increasing the space between workers on the production floor."

(Emphasis added.)

23. On August 3, 2020, the Company filed a Form 10-Q for the fiscal quarter ended June 27, 2020 (the "3Q 2020 10-Q"). Attached to the 3Q 2020 10-Q were SOX certifications signed by Defendants White and Glendinning attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24. The 3Q 2020 10-Q stated the following, in pertinent part, regarding the Company's response to COVID-19:

> "COVID-19 We continue to monitor and respond to the evolving nature of the global novel coronavirus pandemic ("COVID-19" or "pandemic") and its impact to our global business. ***We formed an internal COVID-19 task force for the primary purposes of maintaining the health and safety of our team members, ensuring our ability to operate our processing facilities and maintaining the liquidity of our business.***
>
> \*   \*   \*
>
> Team Members – ***The health and safety of our team members is our top priority.*** To protect our team members, we implement safety measures recommended by the Centers for Disease Control and Prevention ("CDC") and the Occupational Safety and Health Administration ("OSHA") in our facilities and coordinate with other health officials as appropriate, including, but not limited to, checking the temperature of team members as they enter company facilities, restricting visitor access, increasing efforts to deep clean and sanitize facilities, ***requiring the use of protective face coverings and making protective face coverings and other protective equipment available to team members, and encouraging team members who feel sick to stay at home through relaxed attendance policies and enhanced benefits.*** We implemented additional ways to ***promote social distancing in our production facilities*** by creating additional breakroom space and allowing extra time between shifts to reduce interaction of team members, as well as erecting dividers between workstations or increasing the space between workers on the production floor."

(Emphasis added.)

25. On November 16, 2020, the Company filed a Form 10-K for the fiscal year ended October 3, 2020 (the "2020 10-K"). Attached to the 2020 10-K were SOX certifications signed by Defendants Bank and Glendinning attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26. The 2020 10-K stated the following, in relevant part, regarding the Company's response to the coronavirus:

"Health and Safety: We maintain a safety culture grounded on the premise of eliminating workplace incidents, risks and hazards. We have created and implemented processes to help eliminate safety events by reducing their frequency and severity. We also review and monitor our performance closely. Our goal is to reduce Occupational Safety and Health Administration ("OSHA") recordable incidents by 10% year over year. During fiscal 2020, our recordable incident rate declined 17% compared to fiscal 2019. ***In response to the global novel coronavirus pandemic ("COVID-19" or "pandemic"), we have implemented and continue to implement safety measures in all our facilities.*** As an expansion of our We Care workplace safety program and continued efforts to boost the overall health and wellness of our workforce, we are piloting health clinics near our production facilities, giving team members and their families easier access to high-quality healthcare.

\*   \*   \*

COVID-19 We continue to monitor and respond to the evolving nature of COVID-19 and its impact to our global business. ***We formed an internal COVID-19 task force for the primary purposes of maintaining the health and safety of our team members, ensuring our ability to operate our processing facilities and maintaining the liquidity of our business.***

\*   \*   \*

Team Members – ***The health and safety of our team members is our top priority.*** To protect our team members, we have implemented and will continue to implement safety measures recommended by the Centers for Disease Control and Prevention ("CDC") and the Occupational Safety and Health Administration ("OSHA") in our facilities and coordinate with other health officials as appropriate, including, but not limited to, checking the temperature of team members as they enter company facilities, restricting visitor access, increasing efforts to deep clean and sanitize facilities, ***requiring the use of protective face coverings and making protective face coverings and other protective equipment available to team members and encouraging team members who feel sick to stay at home through relaxed attendance policies and enhanced benefits.*** We implemented additional ways to ***promote social distancing in our production facilities*** by creating additional breakroom space and allowing extra time between shifts to reduce interaction of team members, as well as erecting dividers between workstations or increasing the space between workers on the production floor.

\*   \*   \*

***Governmental authorities at the federal, state and local levels may increase or impose new or stricter social distancing directives, stay-at-home restrictions, travel bans, quarantines, workforce and workplace restrictions or other measures related to COVID-19.*** Such actions could cause us to continue to incur additional costs."

(Emphasis added.)

27. The statements referenced in ¶¶ 20-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Tyson knew, or should have known, that the highly contagious coronavirus was spreading throughout the globe; (2) Tyson did not in fact have sufficient safety protocols to protect its employees in its facilities; (3) as a result, Tyson employees contracted and spread the coronavirus within the facilities; (4) as a result of the foregoing, Tyson would face negative impact to its production, including complete shutdowns of certain facilities; (5) due to the failure to protect its employees, Tyson would suffer financial harm related to its lowered production; and (6) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

28. On December 15, 2020, New York City Comptroller Scott M. Stringer ("Comptroller Stringer") called on the SEC to open an investigation into Tyson. In his letter to the SEC, Comptroller Stringer described, in relevant part, Tyson's various failures to carry out its stated coronavirus protection policies:

> Unfortunately, *the steps Tyson eventually took to protect employees were grudging and minimal, such as letting workers use bandanas or sleep masks, which function poorly as protective devices. Tyson never moved workers six feet apart throughout the plant, nor did it slow the assembly line so that workers could be socially distanced. The Company did hang plastic sheeting between workers as they continued to work elbow to elbow, even though the Centers for Disease Control and Prevention ("CDC") told the industry that plastic sheeting does not work unless workers are at least six feet apart.*
>
> As COVID-19 was infecting its employees, *Tyson reportedly misled its workforce in its largest pork plant* by telling them that "everything is fine." *Eventually over 1000 workers in that plant tested positive, leading to worker deaths,*

9

> *hospitalizations, and plant closure.*
>
> ***Tyson's sick leave policy was similarly limited.*** As COVID-19 swept through its plants, in a nod to the CDC guidance that sick workers must stay home, ***Tyson paused its policy of penalizing workers who called in sick for a few months.*** However, it appears that ***Tyson then proceeded to undermine that policy.*** In April, employees were incentivized to continue working via a $500 "thank you" bonus promised to workers who showed up for every scheduled shift over a three month period. Then *in June, Tyson reinstated its policy penalizing workers who take sick leave to avoid contact with any exposed workers.*
>
> Other steps were similarly limited. ***Tyson only reluctantly built some outdoor break rooms in a few plants to prevent workers from crowding into break rooms. Workers had to continue crowding into bathrooms, and many never got time to even visit a bathroom once a day.***
>
> Tyson's tardy and limited reaction took a serious human toll. A report by the non-profit Food Environment Reporting Network has tracked COVID-19 outbreak in the meatpacking industry (as well as the food processing and farm sectors) and reports that *as of December 3, 2020 Tyson has the highest number of COVID-19 cases of any company in the meatpacking industry, more than three times as many cases as the next company* (11,087 vs. 3,026 cases at JBS, the nation's largest meatpacking company). ***Tyson reported twice as many deaths as any other meatpacking company.*** Recent research data demonstrate that Tyson and other companies in the meatpacking industry are uniquely vulnerable to COVID-19 outbreaks. A November 2020 article published under the aegis of the National Academy of Sciences estimated that livestock plants were associated with 236,000 to 310,000 COVID-19 cases (6 to 8% of total) and 4,300 to 5,200 deaths (3 to 4% of total) as of July 21, 2020.

(Emphasis added.)

37. On this news, the price of Tyson shares fell $1.78 per share, or 2.5%, to close at $68.25 per share on December 15, 2020, on unusually heavy trading volume, damaging investors.

38. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who purchased publicly traded Tyson securities during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Tyson and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tyson securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a)     whether the Exchange Act was violated by Defendants' acts as alleged herein;

      b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of the Company;

      c)     whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

      d)     whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

      e)     whether Defendants acted knowingly or recklessly in issuing false filings;

      f)     whether the prices of Tyson securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

      g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a)  Tyson shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

    b)  As a public issuer, the Company filed periodic public reports;

    c)  Tyson regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

    d)  Tyson's securities were liquid and traded with moderate to heavy volume during the Class Period; and

    e)  The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

  46.  Based on the foregoing, the market for Tyson securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

  47.  Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### **Against All Defendants**

  48.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tyson securities during the Class Period.

52. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of Tyson's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential

proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

53. Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tyson personnel to members of the investing public, including Plaintiff and the Class.

54. As a result of the foregoing, the market price of Tyson securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tyson securities during the Class Period in purchasing Tyson securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

55. Had Plaintiff and the other members of the Class been aware that the market price of Tyson's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Tyson's securities at the artificially inflated prices that they did, or at all.

56. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

57. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Tyson's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Tyson's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

60. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tyson's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tyson disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tyson securities.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: February 2, 2021

      **THE ROSEN LAW FIRM, P.A.**
      By: /s/ Phillip Kim
      Phillip Kim, Esq. (PK 9384)
      Laurence M. Rosen, Esq. (LR 5733)
      275 Madison Avenue, 40th Floor
      New York, NY 10016
      Telephone: (212) 686-1060
      Fax: (212) 202-3827
      Email: pkim@rosenlegal.com
             lrosen@rosenlegal.com

      *Counsel for Plaintiff*