# Freshfields Bruckhaus Deringer US LLP

**MARY EATON**
601 Lexington Avenue
31st Floor
New York, New York 10022
Tel: 212 277 4000
Fax: 212 277 4001
mary.eaton@freshfields.com

April 19, 2021

<u>VIA ELECTRONIC FILING</u>

The Honorable Roanne L. Mann
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *Guo v. Tyson Foods, Inc., et al.*, No. 21-cv-00552 (E.D.N.Y.) (AMD) (RLM)

Dear Judge Mann:

        This firm represents defendants Tyson Foods, Inc. ("Tyson"), Noel White, Dean Banks, and Stewart Glendinning ("Defendants") in the above-captioned putative securities fraud class action.  We write regarding the motion filed by H Fried Canada Inc. ("HFC") to be appointed lead plaintiff in this case.  (ECF No. 10.)  While Defendants take no position on that motion, we write to furnish the Court with certain relevant background information and case law bearing upon the Court's assessment.[1]  Defendants believe that this submission is warranted in light of the unique circumstances presented here, where only one complaint was filed, only one purported class member has moved to be appointed lead plaintiff, and certain relevant details about both the named plaintiff's and the movant's transactions appear not to have been fully disclosed.

        On February 2, 2021, Plaintiff Mingxue Guo (a resident of Canada) filed the instant Complaint (ECF No. 1), alleging that Tyson supposedly made certain false and misleading statements about its response to the COVID-19 pandemic during the period between March 13, 2020 and December 15, 2020 (the "Class Period").  On the same day the Complaint was filed, Guo's counsel published notice of the action as required under the PSLRA.  (ECF No. 11-1.)  Accordingly, any member of the putative class wishing to serve as lead plaintiff was required to so move the Court within 60 days thereafter.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  On April 5, 2021, the statutory deadline, Guo's counsel filed the motion to appoint HFC lead plaintiff.  (ECF No. 10.)  According to its supporting memorandum, HFC is "a private investment entity owned by Mr. [Harry] Fried," a resident of Canada.  (ECF No. 11, at 1 n.1.)  No other member of the

---

[1] Courts have observed that the lead plaintiff process "work[s] better with more information than less," including information supplied by defendants.  *See, e.g.*, *King v. Livent, Inc.*, 36 F. Supp. 2d 187, 190-91 (S.D.N.Y. 1999) ("Nothing in the text of the [Private Securities Litigation Reform Act ("PSLRA")] precludes or limits the right of defendants to be heard on the issue.").

putative class came forward seeking appointment as lead plaintiff, nor has any other Tyson stockholder filed a complaint.

The PSLRA provides that the court should select as lead plaintiff the person with the largest financial interest in the litigation from among the named plaintiff and any movants, so long as that person satisfies Federal Rule of Civil Procedure 23's adequacy and typicality requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons that follow, it appears that neither Guo nor HFC has satisfied or can satisfy these requirements.

Guo purchased 500 shares of Tyson stock on both June 9 and June 10, 2020 for $66.70 and $65.80, respectively. (ECF No. 1-1.) These purchase prices are less than the PSLRA's 90-day "lookback" price of $66.86 as calculated by Guo's counsel. (ECF No. 11-3.)[2] This means that Mr. Guo suffered no compensable losses, cannot "state a claim for relief," and lacks standing to sue. *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844465, at *9 (S.D.N.Y. Oct. 25, 2006). It is for this reason, presumably, that Guo did not seek appointment as lead plaintiff. Guo's lack of standing raises serious questions about the Court's ability to allow this action to proceed at all, let alone to elect a lead plaintiff. *See, e.g.*, *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) ("[T]he selection of lead plaintiffs does not remove the basic requirement that at least one *named* plaintiff must have standing to pursue each claim alleged."); *Goldberger v. Bear, Stearns & Co.*, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000) ("If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").

As for HFC, Defendants respectfully call the Court's attention to its "Loss Chart," which states that all of its shares in Tyson stock "were acquired pursuant to an options assignment." (ECF No. 11-3.) We understand the Loss Chart to mean two things: (i) that HFC sold naked put options in Tyson stock at an exercise price of $77.50 at some unspecified date; and (ii) that the options were exercised by a third party and randomly assigned to HFC, requiring HFC to acquire Tyson stock at the then-applicable market price (which was well below the strike price) to cover the put. However, put sellers are generally not appropriate lead plaintiffs because they are subject to unique defenses, including that their alleged losses are driven by the difference between the option's predetermined strike price and the market price on the date of acquisition. For instance, in *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020), the court denied a motion to appoint as lead plaintiff a class member "whose losses overwhelmingly reflect his sale of put options" because, among other reasons, it raised questions "as to whether [he] was motivated by the same market incentives as class members who traded shares on the open market." Similarly, in *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019), the court likewise denied a motion to appoint a class member for whom "approximately 60% of his claimed losses came as a result of options trading,

---

[2] The PSLRA's lookback provision, 15 U.S.C. § 78u-4(e)(1), limits a plaintiff's damages to the difference between the purchase price paid and the mean trading price of the stock during the 90-day period beginning on the date of the alleged corrective disclosure.

which included sales of both puts and calls," because it "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *Id.* (citation omitted).

While Defendants do not know for certain (because neither HFC nor its counsel disclosed it), it appears likely that HFC wrote all of the options before the Class Period began. We suspect this because HFC's options were "in the money" for the entirety of the Class Period—*i.e.,* the price of Tyson stock during the Class Period was always well below the $77.50 strike price. (*See* Ex. 1.)[3] If HFC did write the put options prior to the Class Period, then of course it could not have relied upon any of Tyson's alleged misstatements or omissions, and, like Guo, lacks standing. *See Jurkowski v. Molycorp, Inc.*, 2014 WL 12792750, at *3 (S.D.N.Y. Apr. 2, 2014) (denying lead plaintiff motion because applicant "sold put options before the class period and therefore there is no link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price") (internal quotation marks and citation omitted). In addition, although the PSLRA requires every lead plaintiff applicant to set forth "all of [its] transactions . . . in the security that is the subject of the complaint during the class period," 15 U.S.C. § 78u-4(a)(2)(A)(iv), HFC's certification (ECF No. 11-2) does not list the date(s) on which it sold the put options, even though it admittedly acquired 100% of its shares that way. Those dates are central to the issue of both standing and adequacy because, as the *Jurkowski* court explained, in the few cases where put sellers have been appointed lead plaintiff, the puts were sold during the class period, not before. *See id.*

In sum, it appears from the information available that there is presently no shareholder who can serve as lead plaintiff because neither the original named plaintiff (Guo) nor the proposed lead plaintiff (HFC) has standing to assert claims against Defendants under the Securities Exchange Act, neither is suitable to serve as a representative of the putative class, and no other stockholder has stepped forward—either by filing a complaint or a competing lead plaintiff motion—before the 60-day period under the PSLRA closed. Should the Court find it useful, we stand ready to discuss how next to proceed in light of these unique circumstances. *See Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *4 (S.D.N.Y. Dec. 1, 2016) (allowing additional period of 30 days for existing plaintiffs to submit lead plaintiff application where initial applicant had standing but did not meet Rule 23's requirements); *Gutman v. Sillerman*, 2015 WL 13791788, at *2 (S.D.N.Y. Dec. 8, 2015) (rejecting lead plaintiff application based on complaint filed outside the statutory period); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (rejecting lead plaintiff applicant who lacked standing because it "face[d] unique legal issues that other class members [did] not" and instead considering any other timely movants).

---

[3] To assume otherwise would necessarily mean that HFC wrote options that were "in the money" at inception and could have been immediately executed by a third party at a substantial loss to HFC without its input or control.

We thank the Court for its consideration of this submission.

Respectfully submitted,

/s/ Mary Eaton
Mary Eaton

CC:    All Counsel of Record (via ECF)