UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MINGXUE GUO,

                PLAINTIFF,           Case No.:

v.                                1:21-cv-0552-AMD-JRC

TYSON FOODS, INC., ET AL,      August 16, 2021

              DEFENDANTS.


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES</u>:

| | |
|---|---|
| For the Plaintiff, H Fried Canada Inc. | PHILLIP KIM, ESQ.<br>The Rosen Law Firm<br>275 Madison Avenue<br>40th Floor<br>New York, NY 10016 |
| | JOSHUA EVAN BAKER, ESQ.<br>The Rosen Law Firm<br>101 Greenwood Avenue<br>Suite 440<br>Jenkintown, PA 19046 |
| For the Defendant, Tyson Foods, Inc.: | MARY JANE EATON, ESQ.<br>MEREDITH EVE KOTLER, ESQ.<br>NICHOLAS ANGELO CASELLI, ESQ.<br>Freshfields Bruckhaus Deringer<br>US LLP<br>601 Lexington Avenue<br>Suite 31st Floor<br>New York, NY 10022 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Opti-Script, Inc. | 800-494-7500
production@opti-script.com
P.O. Box 77, Winfield, PA 17889-0077

AUGUST 16, 2021

THE COURT:  Good afternoon, everyone.  We're here in Guo versus Tyson Foods, Inc., case number 21cv552.  I'm Judge Cho.

Can the parties state their appearances for the record starting with the movant and Plaintiff?

MR. KIM:  Good afternoon, Your Honor.  Phillip Kim, Rosen Law Firm, for lead Plaintiff Movant, H Fried Canada Incorporated.  Also on the line is Joshua Baker from my office.

THE COURT:  Good afternoon.  And for Defendant, Tyson Foods, Inc.?

MS. EATON:  Good afternoon, Your Honor.  Mary Eaton from Freshfields.  And also on the line with me are Meredith Kotler and Nick Caselli.

THE COURT:  All right.  Good afternoon, everyone. You can be rest assured I've reviewed all the motion papers in connection with the appointment of lead counsel and lead plaintiff, including the ones submitted this morning by Freshfields.  So you can assume I've read the papers, but I'll -- I'll hear from the parties.

Mr. Kim, do you want to address your motion or do you want to highlight --

MR. KIM:  Yes, Your Honor.

THE COURT:  -- point out of interest?  Go ahead.

MR. KIM:  Sure.  I'd just like to -- I'm sorry.  I

didn't want to interrupt you.

THE COURT:  Go ahead.

MR. KIM:  Okay.  I just want to highlight a couple of things which I think is uncontested by Tyson that they do not have standing to challenge lead plaintiff appointment and that's for good reason.  I think the authorities that we cited indicate that courts do not entertain challenges by defendants because, you know, their view is not to protect the interests of the class.  Their view is to not have a case against them. And I think that principle stands here.

Secondly, the other point that they make is even if the Court were to consider their arguments, you know, I think what's distinguishable from the Judge Crotty (ph.) case that they cite is in that case the class consisted of those who purchased the securities.  Here, the class is broader, which include is people who purchased or otherwise acquired.  The fact of the matter is, is H Fried Canada acquired Tyson stock at artificially inflated prices and suffered a loss.  That should end the inquiry.

You know, we cite some cases where the courts have found that options purchasers are suitable lead plaintiffs. And they cite some cases where courts have not selected options purchasers, but those were in the context of contested lead plaintiff motions where there were other lead plaintiff movants that were ready to be appointed lead plaintiff.  And the courts

there found that those were just better lead plaintiffs that didn't have potential issues that defendants may raise with respect to options. Here we have one movant. And if the Court were to find that this movant is -- is -- is no good because he engaged in options transactions and -- and -- and acquired the stock, then there's no lead plaintiff; there's no case. And they haven't cited a case where a court has found that situation.

So I think everything's set forth in the papers. I think Defendants do not contest they have no standing to challenge this. The case should move forward. As we noted in our papers, we also have the right to add additional named plaintiffs as the Second Circuit is recognized to round out any standing or class issues, which we intend on doing. And, you know, their opportunity to challenge the pleadings will be at the motion to dismiss stage. Their opportunity to challenge the Plaintiffs will be at that stage and -- and later on in class certification. So I think for those reasons the Court should grant the motion and let the case proceed to the next steps.

THE COURT: All right. One question I want to ask you, and I'll probably ask this of the other side as well. You mentioned that if there is no lead plaintiff, there is no case. Do you want to elaborate on that? What do you mean by that?

MR. KIM: Well, the statute requires the appointment

of a lead plaintiff, and -- and generally that has to happen before the Court goes to assessing the complaint. And, you know, once a lead plaintiff is appointed, an amended complaint will be filed by the lead plaintiff, discovery is stayed throughout this whole process, and Defendants will file a motion to dismiss. So the statute requires the appointment of a lead plaintiff before the case gets to the merits.

THE COURT: Okay. So I appreciate that.

All right, Ms. Eaton. Do you want to be heard?

MS. EATON: Yes. Thank you, Your Honor.

I don't think it's any exaggeration to say that there is something seriously wrong here. This case was first filed on February 2nd of this year on behalf of the class of persons who allegedly relied on Tyson's supposed misstatements in determining to acquire Tyson securities during the period between March 13, 2020, and December 15, 2020, at prices that were allegedly artificially and falsely inflated.

In the complaint, he, in fact, goes on to say that had the Plaintiff and other members of the class been aware that the market price of Tyson's securities during the class period was artificially inflated, they would not have purchased Tyson securities at those prices that they did or at all. And that's from paragraph 65. So, notwithstanding my -- my -- what my friend had to say in his opening remarks, the fact of the matter is that the class that the movant seeks to represent

comprises investors who purchased or otherwise acquired Tyson securities during the class period in reliance on the market price of the securities during the class period and are damaged thereby.

Now, I won't -- since Your Honor has already read the papers -- I won't spend any time going through the history of what transpired here, but I do think that it's important to point out that the trades in which the movant engaged are quite unusual.  If you look at the loss chart that was submitted with the application to be appointed as lead plaintiff, you will see that HFC purchased 700 shares on September 24th at the -- at a price of $77.50 per share.  The market price that day, at least the closing price, was $56.91.  They overpaid with respect to that transaction by $14,413.

And then they did that again approximately two weeks later.  They bought 1,300 shares on October 6th at a price of, again, $77.50 when the market price that day was $59.23.  So on the second transaction, they overpaid by almost $24,000, for a total overpayment of roughly $40,000, which is nowhere explained in the movant's motion papers.  But and clues as to what happened here can be found in the footnotes to the lost chart which says that the purchases were made pursuant to an options assignment.

And what that means, Your Honor, it seems quite evident that this is the case that HFC sold -- wrote or sold

these options before the class period, was paid some unspecified sum of money in connection with that sale, giving the right to the buyer to require the seller, HFC, to buy the shares at the strike price of $77.50.  And that is the only plausible explanation for why the movant purchased the shares at the price it purchased them in September and October.

        This means a few things.  One is that the movant did not engage in -- in a voluntary purchaser acquisition of the shares during the class period it bought them, during the class period, because it was required to under the options contract it sold.  And it did not -- importantly, it did not rely on the market price in making that acquisition.  That's point number one.

        Point number two is that the movant wasn't damaged thereby in the normal sense in which that phrase is meant in this context.  If it had bought the shares at the market price, it like the original Plaintiff, would not have suffered a compensable loss because the market price of the stock on those days was less than the 90-day lookback price as calculated by Plaintiff counsel.  So if it had been any other regular investor buying shares during the class period, it would not qualify.  As lead plaintiff, it would not qualify frankly as a member of the class because it would not have suffered any damages.

        Now, we went to some lengths to try and explain to

the Court why we believe that that, based on the information available, that these option contracts must have been written before the class period began, which means that if that's true, that the movant relied on the market price of Tyson securities at the time it wrote the contract outside of the class period. And if that's the case, under Gercowsky (ph.) and other authorities, it is not an appropriate lead plaintiff.

I would note that Mr. Kim has not disputed any of the points that we made in that regard which strongly suggest that they are conceding that that's when the option contracts were written. Instead, that, at least as I understand it, they're taking the position that the Defendants have no standing to bring these facts to the Court's attention and that we -- we supposedly have conceded that we have no standing to do that and that the -- the courts appoint option traders and lead plaintiffs all the time, and that whatever problems there may be now can be cured at some later point when Defendants make their motion to dismiss or, if the Court allows it, by appointing additional Plaintiffs as -- as named by just non lead plaintiff to quote unquote, fill in the gaps with respect to any standing problems.

And with the Court's permission, I'll address each of those things quickly.

THE COURT: Sure. Go ahead.

MS. EATON: And it is -- it isn't the case that we

have conceded Mr. Kim's point about standing. In fact, the case law is mixed as to whether Defendants have standing to object to a lead plaintiff application or not. There are several cases in the Eastern District that hold that a defendant does have standing to raise such objections. But no case -- even in those cases that say the defendant doesn't have standing -- there is no case that says that the defendant cannot bring facts to the Court's attention that bear on the decisions that the Court must make under the PSLRA as to whether the movant is an appropriate lead plaintiff.

And that just makes sense, Your Honor, because there are going to be circumstances -- this being one of them -- where there is no competing applicant for lead plaintiff status. And in an adversarial system like ours, it -- it -- it doesn't make any sense that relevant facts cannot be brought to the Court's attention, particularly because those facts happen to be known only by -- by the Defendant.

With respect to the second issue, Courts appoint option holders all the time. It is certainly true and we acknowledge it, that there are some cases where option holders have been appointed lead -- lead plaintiff, but those cases are fundamentally different from this case. Those were cases where the option holder, the writer of a put (ph.) option, wrote that contract during the class period, which means that they relied on the allegedly inflated marketplace of the securities at the

time that they wrote the option contract.

That is not the case here.  And under Gercowsky and the other cases we cited in our papers, it is -- it is clear that any investor who either bought outside the class period or wrote an option outside the class period, could not have relied on the allegedly -- alleged misstatement and omissions in making that investment decision, which is exactly what we have here.  And I would not parenthetically that none of the cases cited by the movant actually hold.  Otherwise, they dealt rather with situations where there were different claims and the lead plaintiff had standing with respect to some claims but not other claims, and the court in those instances said, well, they do have standing to be the lead plaintiff.  And as to these other claims, we can in effect fill in the gaps through the addition of -- of additional named plaintiffs.

That's not this case.  There's only one claim.  And any lead plaintiff seeking to represent the class to pursue that one claim has to have standing.  And this -- this applicant does not.

As to the last -- the last issue, I would say, yes, it would not be an appropriate solution here to say that the gap could be filled through the addition of -- of more named plaintiffs.  Somebody has to have standing.  The lead plaintiff has to have standing.  And the PSLRA could not be more clear about that.  So that's not an appropriate solution.  And if

indeed it is the case that there is nobody else with standing who's prepared to stand up and pursue these claims on behalf of the class, then indeed, yes, the case should be over.

THE COURT: All right. A couple of questions, Ms. Eaton. Oftentimes these motions are decided even before the Defendant has even been served with the complaint. And I appreciate all the letters that you've submitted on behalf of the Defendant. In your view, if the Court were to deny the movant's motion, what happens to this case?

MS. EATON: Well, there are several cases where there have been issues -- not quite the same issue as presented here -- different sorts of issues. But in plenty of instances, the Court has afforded the law firm seeking to represent the lead plaintiff as a certain amount of time to go out there and find a -- a -- a -- an appropriate substitute.

Now, I don't know why Mr. Kim hasn't asked for more time in this particular situation. That seems to me it -- it would have been an appropriate request to make, but typically that's what occurs.

THE COURT: And if no substitute plaintiff is found, in your view, what would happen next after that?

MS. EATON: Well, then this particular case is over, but it's -- I -- and I think it's important to stress this point, Your Honor. Any other investor who's -- who believes that it -- a -- a violation of the Exchange Act has occurred

and wants to seek relief can come forward.  The dismissal of this case does not preclude that.  So if there's somebody else out there, they have -- if the time permitted under -- under the Exchange Act to step forward and -- and bring a claim.  So it isn't -- I want to be clear -- I don't believe and the -- what we're trying to emphasize is it does not mean that no claim ever can be brought.  What it does mean is that this claim cannot be brought.

THE COURT:  I hear what you're saying, but isn't it also true that all the arguments that you have essentially set forth before the Court at this point and time are arguments that are more appropriately raised on a motion to dismiss at the appropriate time?  In other words, why -- why do we need to address those issues in -- in this motion as opposed to an anticipated motion to dismiss?

MS. EATON:  I -- I understand the question, Your Honor, and thank you.  I think fundamentally somebody has got to have standing to bring this claim.  And as things stand now, the -- the only person that -- that Mr. Kim's firm has proposed does not have standing.  We should not have to wait to get an amended complaint to go through the costly exercise of making a motion to dismiss and arguing what is already obvious from the submissions and the information that's before Your Honor right now.

And -- and I would add that courts regularly deal

with this -- these sorts of issues at this phase in the litigation. The -- what's different about this case as opposed to those other cases, is that there is no competing applicant. But that doesn't mean, Your Honor, that you can't consider the issues. There just isn't another shareholder at this juncture who is seeking lead plaintiff status.

THE COURT: All right. Understood. Understood. But it seems to me that the outcome, if the Court were to deny the motion in light of the arguments that you're raising, is in a sense a decision essentially that -- to dismiss this action essentially, right, at this stage?

MS. EATON: Well, no. I would say -- I'm sorry, Your Honor. I -- I didn't mean to interrupt you.

THE COURT: No, go ahead. No, go ahead. I -- I think I know where you're going.

MS. EATON: Well, I would say --

THE COURT: Yeah.

MS. EATON: Well, I would say that the appropriate solution is -- is to deny the motion because no -- it seems that nobody really fundamentally disagrees that this -- the proposed -- the applicant, the movant, is -- does not have standing to represent this class. It's not a class member in that sense. But the appropriate solution is to deny their application and to reopen the lead plaintiff process for some defined period of time -- typically 30 days -- for the Rosen

Law Firm to find a shareholder who does have standing and can therefore represent the class.

THE COURT: Okay. Anything else, Ms. Eaton?

MS. EATON: I think I -- well, that's it for now, Your Honor, unless you have any --

THE COURT: Okay.

MS. EATON: -- additional questions.

THE COURT: No. That's all I have for -- for you for now.

All right, Mr. Kim. Do you want to be heard?

MR. KIM: Yes, Your Honor. Just some points briefly. The first point, first and foremost, we've never conceded that H Fried lacked standing. You know, our point is basically to the extent that these -- these -- these arguments that they raise ultimately go to standing with respect to different claims that are -- that's alleged in this class, we could add additional named plaintiffs. And there's no appointment process. I mean, basically, when we amend the complaint we would add additional named plaintiffs to round out standing.

So it's incorrect that we've conceded that our client lacks standing. The class that's asserted here are those who purchased or otherwise acquired the securities of Tyson, which is different than the Murkowski (ph.) class which was basically -- which not basically -- which was those who purchased the securities.

Fried bought Tyson common stock. It otherwise acquired them in connection with a -- an options transaction. Therefore, it bought the securities, it lost money, and based on the -- the description of the class as it is, has standing to pursue the claim. So we -- we strongly dispute that.

And sort of this characterization that, you know, this is an unusual case or, you know, any kind of underlying tone in -- in the letter they submitted today, which I did not appreciate, is -- is the idea that there's something unusual about this case. There's nothing unusual about a securities class action that has options transactions. I -- I think the cases that are cited -- you know, in -- in cases where you had competing movements, the Court found that the one that didn't primarily have options was a better lead plaintiff. In the Murkowski case, the Court -- one of the reasons, the sole reason wasn't the fact that they engaged in options transactions. There was another reason, which was they didn't end up having the largest loss.

So I think in this situation where you have one movant and you don't have a competitor, in that situation, H Fried should be appointed, Your Honor.

THE COURT: Okay. Understood.

All right. Mr. Kim, so you've heard the arguments raised by Ms. Eaton and their view as to deficiencies with the case as it stands now. How do you want to proceed? The Court

can rule on your motion.  If you want to see if you can shore up some of these deficiencies alleged by the Defendant, that's an option too.  What's your preference?

MR. KIM:  I haven't thought about it in that context.  If you'll just give me a second to kind of think about it.  Again --

THE COURT:  Look, you don't have to --

MR. KIM:  Again, the answer is just depending on how you rule.

THE COURT:  You don't have to decide today.  Look, I am not going to rule today.  I know this motion has been pending since April, so I take full responsibility just the fact that it's now August and we're addressing this motion now.  But you can be rest assured that the Court will move expeditiously on ruling on the motion.  It just won't be today.

I did want to talk to the parties in light of the -- the letters that have been submitted by both sides to at least give the parties an opportunity to be heard on their letters, but okay.  So, look, I don't need a --

MR. KIM:  Your Honor, perhaps I suggest --

THE COURT:  Yeah.  Go ahead.

MR. KIM:  Your Honor, perhaps I suggest this.  You know, maybe you give me a week to think about it and then perhaps, you know, we can submit a letter to the Court if there's some sort of agreement on procedure by Monday.  And --

and then, you know, obviously if we're unable to work something out or to -- to have a preference on how things should proceed, then we could just note in that joint letter that there's no agreement and we, you know, respectfully request the Court to issue a decision or if there's some sort of compromise, then we can present that to the Court.  That's my suggestion.  I don't know how Defendants feel about that.

THE COURT:  Yeah.  Ms. Eaton, any -- any thoughts on that?

MS. EATON:  Your Honor, I have no objection to proceeding in that fashion, but there is one thing, one point that I would like to make in response to what Mr. Kim just said.

THE COURT:  Sure.

MS. EATON:  Which -- which was they're not conceding that the movant lacked standing.  I -- I find that very troubling, Your Honor, because we have some time ago pointed out the fact that there is critical missing information from the movant's application to be lead plaintiff.  And while I mean no disrespect to Mr. Kim and apologize if he took offense at the tone of my letter this morning, but the fact of the matter is that similar, critical, dispositive information was not disclosed in another case in which Mr. Kim and his firm were involved that is exactly parallel to the situation we have here now.

So if indeed they're going to take the position that the movant does not lack standing, as officers of the Court, they should disclose when -- when these option contracts were written and how much HFC was paid for them, both because that goes to standing and because they have not disclosed, as they are required, the actual losses that the movant allegedly suffered.

THE COURT:  Okay.  Understood.  All right.  How about this?  I'll give the parties one week to submit a letter to the Court.  And it -- it can be a very short letter.  Either, one, you want the Court to go ahead and rule on the motion, or two, the movant is considering another option or otherwise.  Okay, Mr. Kim?  Does that make sense?

MR. KIM:  Understood, Your Honor.  Thank you.

THE COURT:  Okay.  Ms. Eaton, anything else on your end?

MS. EATON:  Nothing further.  Thank you, Your Honor.

THE COURT:  Okay.  And this letter, it can be joint, but it doesn't have to be, all right, because this is movant's motion.  So you just let me know.  If -- if it's joint, fine. If it's not, that's fine as well, okay?

All right.  And once I get that letter, the Court will notify the parties as to what's going to happen next, okay?

MS. EATON:  Thank you, Your Honor.

MR. KIM:  Yes, Your Honor.

THE COURT:  With that, we're adjourned.  Thank you, everyone.  Have a nice day.  Bye.

(Proceedings concluded)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated: August 18, 2021

_____
Crystal Thomas, CET
Legal Transcriber
Opti-Script, Inc.