UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MINGXUE GUO, Individually and On Behalf of All        :
Others Similarly Situated,                            :
                                                      :
                              Plaintiff,              :      MEMORANDUM AND
                                                      :      ORDER
        -against-                                     :
                                                      :      No. 21-CV-00552-AMD-JRC
TYSON FOODS, INC., NOEL WHITE, DEAN                   :
BANKS, and STEWART GLENDINNING,                       :
                                                      :
                              Defendants.             :
------------------------------------------------------------------ x
JAMES R. CHO, United States Magistrate Judge:

## Introduction

On February 2, 2021, plaintiff Mingxue Guo commenced this putative securities class action against defendants Tyson Foods, Inc. ("Tyson") and certain of its present and former officers and directors, Noel White, Dean Banks, and Steward Glendinning (collectively, "defendants"), alleging violations of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). This action seeks damages on behalf of all persons or entities who purchased or otherwise acquired publicly-traded Tyson stock between March 13, 2020 and December 15, 2020 ("Class Period").

Currently pending before this Court is the motion ("Motion") filed on behalf of Chen Porat ("Porat") and Keagan Marcus ("Marcus") (collectively, "Movants") seeking their appointment as lead plaintiffs and approval of The Rosen Law Firm, P.A. ("The Rosen Law Firm") as Class counsel. *See* Notice of Motion, Dkt. 18, and accompanying Memorandum of Law in Support of Movants' Motion to Appoint Lead Plaintiffs and Lead Plaintiffs' Selection of Counsel ("Movants' Mem."), Dkt. 19. This is the second motion for appointment of lead

plaintiffs and counsel filed in this action.  For the reasons set forth below, the Court denies the

motion.

<strong>Background</strong>

**I.       Factual Background**

Tyson is one of the largest producers of chicken, beef, pork, and other meat and protein

food products in the United States.  *See* Compl. ¶ 8, Dkt. 1.  It is incorporated in Delaware and

headquartered in Arkansas.  *Id*.  During the relevant period, Tyson traded on the New York

Stock Exchange under the ticker symbol "TSN."  *Id*.  Defendant Noel White served as Tyson's

Chief Executive Officer ("CEO") from the beginning of the Class Period until October 2020.  *Id*.

¶ 9.  Defendant Dean Banks served as Tyson's CEO from October 2020 until the end of the

Class Period.  *Id*. ¶ 10.  Defendant Stewart Glendinning served as the Chief Financial Officer

during the Class Period.  *Id*. ¶ 11.

The Complaint alleges that defendants made materially false or misleading statements

and material omissions to the public through several documents filed with the Securities and

Exchange Commission ("SEC") following the onset of the COVID-19 pandemic in early 2020

that resulted in a decline in Tyson's stock price.  *See* Compl. ¶¶ 20-27.  Specifically, in Tyson's

10-Q, 8-K and 10-K reports filed between March 13, 2020 and November 16, 2020, defendants

allegedly made materially false statements about the COVID-19 pandemic and failed to disclose

adverse facts pertaining to Tyson's business, operations, and financial results.  *Id*.  The

Complaint alleges that defendants failed to disclose that Tyson did not have sufficient safety

protocols in place to protect workers from the coronavirus.  *Id*.  As a result, many Tyson

employees contracted the coronavirus.  *Id*.  Due to this outbreak, Tyson limited production,

shutdown plants, and suffered financial harm.  *Id*.

2

On December 15, 2020, New York City Comptroller Scott M. Stringer ("Stringer") "called on the SEC to open an investigation into Tyson."  Compl. ¶ 28.  In a letter to the SEC, Stringer described Tyson's alleged failure to implement sufficient safety protocols by, among other things, not providing employees in meat plants with proper masks and personal protective equipment, implementing social distancing, or encouraging sick workers to stay home.  *Id*. Plaintiff alleges that as a result of this disclosure, on December 15, 2020, Tyson shares fell $1.78 per share or 2.5% to $68.25 per share "on unusually heavy trading volume."  *Id*. ¶ 37.  The Complaint alleges that because of this decline "Plaintiff and other Class members have suffered significant losses and damages."  *Id*. ¶ 38.

## II.     Procedural History

On April 5, 2021, H Fried Canada Inc. ("HFC") moved for appointment as the lead plaintiff and appointment of The Rosen Law Firm as lead counsel.  *See* HFC Motion to Appoint Lead Plaintiff and Counsel ("HFC Motion"), Dkts. 10, 11.  On April 19, 2021, defendants wrote to the Court noting that they took no position on HFC's motion but questioned whether HFC had standing to assert claims against defendants under the Exchange Act.  *See* Defendants' letter dated April 19, 2021, Dkt. 13.  After a hearing on August 16, 2021, HFC voluntarily withdrew its motion, Dkt. 17, and the Court subsequently extended the deadline for filing motions to appoint lead plaintiff and counsel.  *See* Order dated August 24, 2021.

On September 30, 2021, Porat and Marcus jointly moved for appointment as lead plaintiffs and appointment of The Rosen Law Firm as lead counsel.  *See* Dkts. 18, 19.  On October 12, 2021, defendants filed a letter with the Court expressing concerns with the Motion. *See* Defs.' letter dated October 12, 2021, Dkt. 20.  Defendants argue that the Motion should be denied because "neither Mr. Porat nor Mr. Marcus have standing to sue or otherwise meet the

qualifications necessary to serve as lead plaintiff under applicable law." *Id*. at 1.  Specifically, defendants claim that Porat "suffered no cognizable loss," *id*. at 3, and Marcus' claim is subject to unique defenses, *id*. at 4.

On October 20, 2021, Movants responded to defendants' October 12th letter, arguing that they had standing to sue and that defendants did not have standing to oppose the Motion.  *See* Movants' letter dated October 20, 2021, Dkt. 21.  On October 22, 2021, defendants filed a letter responding to Movants' October 20th letter.  *See* Defs.' letter dated October 22, 2021, Dkt. 22. Defendants reiterated, *inter alia*, that neither Porat nor Marcus "is a suitable investor to represent the putative class" and that they did not suffer any losses as a result of the alleged fraud.  *Id*. at 1.

On April 18, 2022, Movants filed a notice of supplemental authority in further support of their Motion.  *See* Notice of Supplemental Authority, Dkt. 23.  Movants highlighted a recent case, *Yang v. Tr. for Advised Protfolios*, No. 21-CV-1047, 2022 WL 970772 (E.D.N.Y. Mar. 31, 2022), where the court purportedly held that "it did not need to address defendants' arguments" because "only members of the purported class may rebut the most adequate plaintiff presumption, which defendants were not."  *Id*. at *4 n.3 (citing 15 U.S.C. §78u– 4(a)(3)(B)(iii)(II)).  On April 19, 2022, defendants responded arguing that "multiple courts in this district and beyond have considered information raised by defendants in resolving applications" and distinguishing *Yang* from this case.  *See* Defs.' Response to Notice of Supplemental Authority dated April 19, 2022, Dkt. 24.  On September 20, 2022, defendants provided the Court with additional supplemental authority, citing *Bosch v. Credit Suisse*, No. 22- CV-2477, 2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022), where the Court denied the applicant's motion for lead plaintiff holding, *inter alia*, that the movant suffered nominal losses and failed to

satisfy the adequacy requirement for appointment of lead plaintiff.  *See* Notice of Supplemental

Authority, Dkt. 25.

## Discussion

### I.      Notice Requirement

The PSLRA requires the plaintiff who files the first action to publish a notice to the

putative class within 20 days of filing the complaint "in a widely circulated national business-

orientated publication or wire service" advising members of "the pendency of the action, the

claims asserted therein, and the purported class period" and "that, not later than 60 days after the

date on which the notice is published, any member of the purported class may move the court to

serve as lead plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3); *see also Darish v. N.*

*Dynasty Mins. Ltd.*, No. 20-CV-5917, 2021 WL 1026567, at *3 (E.D.N.Y. Mar. 17, 2021).  Even

where no party has objected to the adequacy of notice, "courts have an independent duty to

scrutinize the published notice and ensure that the notice comports with the objectives of the

PSLRA."  *See Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886, 2020 WL 8225336, at *3

(E.D.N.Y. Dec. 22, 2020) (internal quotations and citations omitted).

On February 2, 2021, the same day plaintiff commenced this action, a notice was

published in *Business Wire*.  *See* Notice of Class Action dated February 2, 2021, Dkt. 11-1, Ex. 1

("February 2 Notice").  A second notice was published in *Business Wire* on August 27, 2021.

*See* Notice of Class Action dated August 27, 2021, Dkt. 19-1, Ex. 1 ("August 27 Notice").  In

both Notices, counsel advised potential class members of the class period and how to join the

action.  *See* February 2 and August 27 Notices, Dkts. 11-1, 19-1.  Counsel also provided the

deadline by which to file a motion for appointment as a lead plaintiff.  *Id*.

The Court finds the Notices to potential class members sufficient.  *Business Wire* is a

5

suitable publication to provide notice under the PLSRA. *See Chitturi*, 2020 WL 8225336, at *3 (collecting cases finding *Business Wire* a "suitable vehicle for meeting the statutory requirement that notice be published"). Notice initially was filed on February 2, 2021, the same day the complaint was filed. *See* February 2 Notice, Dkt. 11-1. The Rosen Law Firm moved for appointment as lead counsel on April 5, 2021, within 60 days of the initial notice. *See* HFC Motion, Dkt. 10. After counsel voluntarily withdrew the HFC Motion, Dkt. 17, the Court granted an extension until September 30, 2021, for submission of motions for appointment of lead plaintiff and counsel. *See* Order dated August 24, 2021. The Rosen Law Firm published a second notice on August 27, 2021, with the new deadline and filed a second motion within the time allotted. Accordingly, the notice requirement was satisfied, and the pending Motion was timely filed.

## II.    Appointment of Lead Plaintiffs

Under the PSLRA, courts should "appoint as 'lead plaintiff' the member of the class that it determines to be the 'most adequate plaintiff,' *i.e.*, *the member 'most capable of adequately representing the interests of class members*.'" *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)) (emphasis added in original). Courts generally follow a two-step process to determine the "most adequate plaintiff." *See generally Darish*, 2021 WL 1026567, at *5. In the first step, the PSLRA establishes a presumption that the "most adequate plaintiff" is "the person or group of persons that: (1) has either filed the complaint or made a [timely] motion to be appointed as lead plaintiff(s); (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) (internal quotations omitted). The Court considers two objective factors

to determine appointment of a lead plaintiff: "the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 81 (2d Cir. 2004). The PSLRA requires courts to "start with the rebuttable presumption that the most adequate plaintiff is the person or entity with the largest financial interest in the relief sought." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011) (citations omitted).

After the Court finds there exists a presumptively adequate plaintiff, the Court inquires at the second step whether that presumption has been "rebutted" by a member of the purported plaintiff class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This presumption "may be rebutted only upon proof that the presumptively adequate plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Chitturi*, 2020 WL 8225336, at *4 (internal quotations and citations omitted); *see also Bensley*, 277 F.R.D. at 234.

## A.    Largest Financial Interest

"[T]he PSLRA does not specify how to determine which plaintiff has 'the largest financial interest' in the relief sought." *Bensley*, 277 F.R.D. at 234 (citation omitted). To determine which party has the largest financial interest, courts consider the following four factors:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Chitturi*, 2020 WL 8225336, at *4. Most courts have held that the fourth factor, "the

approximate losses suffered," is the most important consideration.  *See Bensley*, 277 F.R.D. at

234 (collecting cases).

Here, Porat purchased a total of 75 shares of Tyson during the Class Period, costing a

total of $4,796.30.  *See* Tyson Foods, Inc. Loss Chart, Dkt. 19-3 ("Loss Chart").  During the

Class Period, Porat sold 40 shares for a total of $2,300.  *Id*.  Porat retained a total of 35 shares of

Tyson stock worth $2,340.05.  *Id*.  Porat claims a loss of $156.25, calculated by subtracting the

value of the shares retained ($2,340.05) and the value gained from the sale ($2,300) from the

total spent on the shares during the Class Period ($4,796.30).  *Id*.

Marcus purchased 56 shares during the Class Period, for a total of $3,911.04 or $69.84

per share.  *See* Loss Chart, Dkt. 19-3.  Marcus claims losses of $166.95, calculated by

subtracting the value of the shares retained ($3,744.09) from the total spent on the shares during

the Class Period ($3,911.04).  *Id*.  Collectively, Movants claim that their financial losses total

$323.20.  *Id*.; *see also* Movants' Mem. at 5, Dkt. 19 ("Movants lost $323.20 in connection with

their purchases of Tyson securities.").

Movants and defendants have not identified any class members with a larger financial

interest.  *See* Movants' Mem., Dkt. 19, at 5.  No other plaintiff has come forward suggesting they

have a greater financial loss.  *See Chitturi*, 2020 WL 8225336, at *5.  Further, even if another

class member had a larger financial interest, no other class member moved for appointment of

lead plaintiff within the allotted time.  *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 362

(S.D.N.Y. 2019).

### B.    Rule 23 Requirements

Under the PSLRA, the movant with the largest financial interest must satisfy the

requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See Balestra*, 380 F. Supp. 3d

at 362.  Rule 23(a) provides that "one or more members of a class" may sue on behalf of the

class if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.  Only two of the prerequisites to class certification -- typicality and adequacy

-- "are relevant to the selection of lead plaintiff."  *Olsen v. New York Cmty. Bancorp, Inc.*, 233

F.R.D. 101, 108 (E.D.N.Y. 2005); *see also City of Ann Arbor Employees' Ret. Sys. v. Citigroup*

*Mortg. Loan Tr. Inc.*, No. CV-08-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009)

("[O]f the four prerequisites to class certification, only two -- typicality and adequacy -- directly

address the personal characteristics of the class representative"), *adopted by*, 2009 WL 10750336

(E.D.N.Y. Mar. 16, 2009).  "At this stage of the litigation, the [movant] must only make a

preliminary showing that the adequacy and typicality requirements have been met."

*Freudenberg v. E*Trade Fin. Corp.*, Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ.

10400, 07 Civ. 10540, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008); *In re Olsten Corp.*

*Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998), *opinion adhered to on reconsideration sub*

*nom. In re Olsten Corp.*, 181 F.R.D. 218, 219 (E.D.N.Y. 1998) ("A wide ranging analysis under

Rule 23 is not appropriate and should be left for consideration of a motion for class

certification.") (citation omitted).

The typicality requirement is satisfied "where the claims arise from the same course of

events and each class member makes similar legal arguments to prove defendant's liability."

*Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070, 2021 WL 5409798, at *7 (E.D.N.Y.

Sept. 17, 2021) (internal quotations and citations omitted).  The movants' claims "need not be

identical to the claims of the class to satisfy the typicality requirement."  *City of Ann Arbor*, 2009

WL 10709107, at *3 (internal quotations and citations omitted).  Rather, courts appoint lead plaintiffs when their "claims are based on the same alleged false or misleading statements and omissions attributed to Defendants during the same period as the other potential class members' claims." *Lavin*, 2021 WL 5409798, at *7.  Here, Movants satisfy the typicality requirement because they both allege that they purchased shares of Tyson stock within the Class Period in reliance on the allegedly false and misleading statements.

However, Movants fail to satisfy preliminarily the adequacy requirement.  The adequacy requirement is met where a movant "will fairly and adequately protect the interests of the class." *Chitturi*, 2020 WL 8225336, at *5 (internal quotations and citations omitted).  For a lead plaintiff to satisfy this requirement of Rule 23:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation.  Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

*Kehoe v. 3D Sys. Corp.*, No. 21-CV-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021). The PSLRA requires the court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members[.]"  15 U.S.C. § 78u-4(a)(3)(B)(i).

Both Porat and Marcus have submitted declarations certifying their willingness to serve as lead plaintiffs and recognizing their role as lead plaintiffs on behalf of other class members in directing the action.  *See* Porat Certification, Dkt. 19-2 at ECF page[1] 2, ¶ 3; Marcus Certification, Dkt. 19-2 at ECF page 4, ¶ 3.  Movants allegedly "sustained *substantial* financial losses from

---

[1] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.

investments in Tyson securities . . . ." Movants' Mem. at 6 (emphasis added).  Specifically, Porat

alleges losses of $156.25, and Marcus alleges losses of $166.95, for a combined total loss of

$323.20.  *See* Tyson Foods, Inc. Loss Chart, Dkt. 19-3 at 3; Movants' Mem. at 5.  Movants can

hardly claim that they each suffered "substantial financial losses."  Based on these nominal

losses, this Court finds that Porat and Marcus lack "sufficient financial interest in the outcome of

the case to incentivize [them] to monitor counsel's performance and control the litigation on

behalf of the putative class."  *See Bosch*, 2022 WL 4285377, at *4.

The PSLRA requires lead plaintiffs to have a large financial interest in the litigation to

incentivize them in directing the litigation and controlling class counsel.  This large financial

interest avoids situations where "a named class representative has a minimal financial stake in

the case and acts primarily as a tool of the lawyers who may well have recruited him."  *Bensley*,

277 F.R.D. at 234 n.8 (internal quotations and citation omitted); *Silverberg v. DryShips, Inc.*, No.

17-CV-4547, 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018) (expressing that lead plaintiff

must have a large financial stake in the litigation to ensure it has the motivation to control

counsel and the course of the litigation); *Iron Workers Local No. 25 Pension Fund v. Credit-

Based Asset Servicing and Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) ("The

theory of the[ ] [lead plaintiff provisions of the PSLRA] was that if an investor with a large

financial stake in the litigation was made lead plaintiff, such a plaintiff -- frequently a large

institution or otherwise sophisticated investor -- would be motivated to act like a 'real' client,

carefully choosing counsel and monitoring counsel's performance to make sure that adequate

representation was delivered at a reasonable price." (internal quotations and citation omitted));

*Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 315-16 (S.D.N.Y. 2005) (citing H.R. Conf.

Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730) ("Congress sought to encourage

institutional investors and other class members with large amounts at stake to step forward as the ideal lead plaintiffs in private securities litigation.").

Here, the combined total loss by Porat and Marcus of $323.20 -- which is approximately half the loss at issue in *Bosch* (*i.e.*, approximately $621) -- "is unlikely to provide the kind of incentive for close supervision of counsel that the PSLRA contemplates." *Bosch*, 2022 WL 4285377, at *5; *see also Richman v. Goldman Sachs Grp., Inc.,* 274 F.R.D. 473, 477 (S.D.N.Y. 2011) (rejecting Bochner's motion for appointment as lead plaintiff and holding that "the dollar amount and [Bochner's] 'financial interest' are minimal to the point of being *de minimis*. Her proposed relief would result in a very tiny tail wagging a very large dog." Bochner alleged losses of $138,325. *See* Analysis of Tikva Bochner's Trading, Dkt. 15-5 in Case No. 10-CV-3595); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 310 (S.D.N.Y. 2001) ("If selected as lead plaintiff, [Pigno's] modest stake [*i.e.*, estimated loss of approximately $40,000] is unlikely to provide the kind of incentive for close supervision of counsel that the Reform Act contemplates, let alone an incentive to strongly negotiate counsel's fees."). Given their nominal losses, as the Court found in *Bosch*, Porat and Marcus have failed to persuade this Court that they have sufficient interest in the litigation to "vigorously" pursue the class claims and adequately represent the interests of class members. *See Bosch*, 2022 WL 4285377, at *5.

Notwithstanding this Court's ruling denying Movants' appointment as lead plaintiffs, this case still may proceed on an individual basis. *See Bosch*, 2022 WL 4285377, at *7 (citing *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089, 2020 WL 5796763, at *9 (S.D.N.Y. Sept. 29, 2020) ("rejected lead plaintiff is of course free to prosecute its claim individually") and *In re Cavanaugh*, 306 F.3d 726, 731 n.7 (9th Cir. 2002) ("where no plaintiff willing to serve as lead

12

satisfies the typicality and adequacy requirements[,] . . . perhaps the case cannot be maintained as a class action").

## Conclusion

For the reasons set forth above, the Court denies the motion for appointment of lead plaintiffs and approval of lead counsel.

**SO ORDERED**

Dated:  Brooklyn, New York
September 30, 2022

s/ James R. Cho
James R. Cho
United States Magistrate Judge

13