**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MINGXUE GUO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TYSON FOODS, INC., NOEL WHITE, DEAN BANKS, AND STEWART GLENDINNING,<br><br>Defendants. | Case No. 1:21-cv-00552-AMD-JRC |

**DEFENDANTS' OPPOSITION TO THE OBJECTIONS OF CHEN PORAT AND KEAGAN MARCUS TO THE SEPTEMBER 30, 2022 MEMORANDUM AND ORDER OF THE HONORABLE MAGISTRATE JUDGE JAMES R. CHO**
**DENYING MOTION TO APPOINT LEAD PLAINTIFFS AND LEAD COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... *ii*

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

      I.      The Applicable Legal Standard ......................................................................... 4

      II.     Judge Cho's Decision Is Consistent with Established Precedent ..................... 5

      III.    Movants Have Not Otherwise Met Their Heavy Burden to Show that the
            Decision Was Clearly Erroneous or Contrary to Law ..................................... 7

      IV.    The Record Contains Ample Additional Grounds to Affirm the Decision .......... 11

CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
103 F. Supp. 3d 343 (E.D.N.Y. 2015) ....................................................................................5

*In re Baan Co. Sec. Litig.*,
186 F.R.D. 214 (D.D.C. 1999)................................................................................................6

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ........................................................................................10

*Bosch v. Credit Suisse Grp. AG,*
22-cv-2477, 2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022)..........................................4, 6, 7, 8

*In re Century Bus. Servs. Sec. Litig.*,
202 F.R.D. 532 (N.D. Ohio 2001) ......................................................................................6, 8

*City of Ann Arbor Emps' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*,
08-cv-1418, 2009 WL 10709107 (E.D.N.Y. Mar. 9, 2009) ...................................................9

*City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*,
19-cv-5530, 2019 WL 13167890 (E.D.N.Y. Dec. 23, 2019).............................................8, 12

*Claybrooks v. Am. Broad. Cos., Inc.*,
12-cv-0388, 2013 WL 1435050 (M.D. Tenn. Apr. 9, 2013) .................................................10

*Cohen v. Luckin Coffee Inc.*,
20-cv-1293, 2020 WL 3127808 (S.D.N.Y. June 12, 2020)....................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
06-cv-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .....................................................12

*Finocchiaro v. NQ Mobile, Inc.*,
15-cv-6385, 2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016)..................................................9, 10

*First Nat. Bank of Louisville v. Lustig*,
89-cv-0202, 1989 WL 126511 (E.D. La. Oct. 18, 1989).....................................................10

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) .......................................................................................10

*Haas v. Verizon N.Y., Inc.*,
13-cv-8130, 2015 WL 5785023 (S.D.N.Y. Sept. 30, 2015) ..................................................6

*Holsinger v. Wolpoff & Abramson, L.L.P.*,
    05-cv-2075 (N.D. Cal. Mar. 23, 2006) ................................................................10

*Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing &*
    *Securitization, LLC*,
    616 F. Supp. 2d 461 (S.D.N.Y. 2009).................................................................10

*Jurkowski v. Molycorp, Inc.*,
    13-cv-5697, 2014 WL 12792750 (S.D.N.Y. Apr. 2, 2014) .....................................2

*Joffe v. King & Spalding LLP*,
    17-cv-3392, 2019 WL 4722673 (S.D.N.Y. Sept. 25, 2019) ..................................11

*Kahn v. NYU Med. Ctr.*,
    06-cv-13455, 2008 WL 190765 (S.D.N.Y. Jan. 15, 2008), *aff'd*, 328 F. App'x
    758 (2d Cir. 2009)..................................................................................................6

*Kasilingam v. Tilray, Inc.*,
    20-cv-3459, 2020 WL 4530357 (S.D.N.Y. Aug. 6, 2020) ............................8, 9, 12

*Kehoe v. 3D Sys. Corp.*,
    21-cv-1920, 2021 WL 5408923 (E.D.N.Y. July 13, 2021) ...................................11

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
    20-cv-4953, 2020 WL 10692524 (S.D.N.Y. Sept. 24, 2020) ............................7, 11

*In re Luxoticca Grp., S.p.A. Sec. Litig.*,
    01-cv-3285, 2004 WL 2370650 (E.D.N.Y. Oct. 22, 2004) ..................................10

*Mfg. Admin. and Mgmt. Sys., Inc. v. ICT Grp., Inc.*,
    212 F.R.D. 110 (E.D.N.Y. 2002) ...........................................................................7

*In re Nice Sys. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999).................................................................................6

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................8, 11

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)......................................................................6

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) .........................................................................6, 7

*Schaffer v. Horizon Pharma PLC*,
    16-cv-1763, 2016 WL 3566238 (S.D.N.Y. June 27, 2016)....................................8

*Schreiber v. Friedman*,
   15-cv-6861, 2017 WL 11508067 (E.D.N.Y. Aug. 15, 2017) ....................................................11

*Silverberg v. DryShips Inc.*,
   17-cv-4547, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ......................................................8

*Storms v. United States*,
   13-cv-0811, 2014 WL 3547016 (E.D.N.Y. July 16, 2014) ........................................................5

*In re Synergy Pharms. Inc. Sec. Litig.*,
   18-cv-0873, 2020 WL 5763830 (E.D.N.Y. Sept. 28, 2020) .......................................................8

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
   16-cv-2758, 2016 WL 2986235 (S.D.N.Y. May 13, 2016) ........................................................6

*Thomas v. China Techfaith Wireless Commc'n Tech. Ltd.*,
   19-cv-0134, 2019 WL 11623934 (E.D.N.Y. May 2, 2019).........................................................7

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   10-cv-0864, 2011 WL 3511057 (E.D.N.Y. May 31, 2011).........................................................9

*Weiner v. McKeefery*,
   11-cv-2254, 2014 WL 2048381 (E.D.N.Y. May 19, 2014).........................................................5

**Statutes & Rules**

15 U.S.C. § 78u-4..............................................................................................................................2, 9

28 U.S.C. § 636...................................................................................................................................5

Fed. R. Civ. P. 72(a) ............................................................................................... *passim*

**Other Authorities**

Charles A. Wright, *et al.*, *Federal Practice and Procedure* (3d ed.) § 3069...................................5

H.R. Rep. No. 104-369 (1995)..........................................................................................................8, 10

**PRELIMINARY STATEMENT**

Judge Cho committed no error in denying Movants' application to be appointed lead plaintiffs of this putative class action. Movants asserted claimed losses of only $323 combined (ECF 19-3 at 2)—not the "substantial" losses their counsel claimed (ECF 19 at 6)—which is insufficient to establish adequacy under existing law. While Movants disagree with Judge Cho's reasoning, their objections do not come close to meeting their "heavy burden" of showing that his decision was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Although this Court need go no further, the record confirms that the Motion was properly denied because (i) Movants in fact suffered no loss at all, (ii) they failed to otherwise support their claim that they could adequately represent the class, and (iii) the history of this litigation shows it is a lawyer-driven exercise the PSLRA was meant to prevent.

**BACKGROUND**

On February 2, 2021, The Rosen Law Firm (the "Rosen Firm") filed a complaint on behalf of Mingxue Guo against Tyson Foods, Inc. and certain of its officers and directors (ECF 1), alleging that Defendants made certain false and misleading statements in 2020 about Tyson's response to the COVID-19 pandemic. According to the Guo Complaint, the "truth" was allegedly revealed on December 15, 2020, when Scott Stringer, the then-Comptroller of New York City, published a letter sent to the SEC (the "Stringer Letter"), citing various public sources about Tyson's pandemic-related efforts to safeguard its workforce and asking the SEC to "investigate" whether the Company's disclosures violated federal securities laws.[1] As required by the PSLRA, the Guo Complaint was accompanied by a certification that recited verbatim the statutorily

---

[1] ECF 22-1. The Guo Complaint does not allege that the SEC took any action in response to Mr. Stringer's request, and in fact no action was ever taken.

required representations for any plaintiff filing a securities complaint. (ECF 1-1 at 1.)[2] Other Tyson stockholders thus had 60 days to step forward if they wished to serve as lead plaintiff and prosecute the claims on behalf of the putative class. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

On the statutory deadline, April 5, 2021, Mr. Guo did not apply to be appointed lead plaintiff. Instead, the Rosen Firm filed a motion to appoint a different putative stockholder as lead plaintiff—H Fried Canada Inc. ("HFC")—asserting that HFC had "communicated with" counsel and suffered "substantial financial losses" on its Tyson investments. (ECF 11 at 7.) The reason for the switch was not hard to discern: Mr. Guo suffered no damages and lacked standing to sue because he purchased his Tyson stock at prices that were less than the PSLRA's 90-day "lookback" price of $66.86. (*See* ECF 1-1 at 1, 11-3 at 2, and 13 at 2.) No other purported class member came forward to seek appointment.

HFC's motion revealed that HFC must have acquired all of its shares pursuant to naked put options written before the Class Period began. (*See* ECF 13, 15.) This meant that HFC could not have relied on any of Defendants' alleged misstatements, was not a member of the putative class, and lacked standing to sue. (ECF 13 at 3.) Accordingly, counsel for Defendants wrote the Court explaining this fundamental deficiency with HFC's application (*id.*) and later updated the Court regarding the Rosen Firm's efforts to represent another put option writer as lead plaintiff in an unrelated action, whose application was denied once the facts came out. (ECF 15.)[3]

On August 16, 2021, the Court held a hearing on HFC's motion. (ECF 17 at 1.) At the hearing, the Rosen Firm admitted to Judge Cho that if HFC's application were denied, "there's no

---

[2] 15 U.S.C. § 78u-4(a)(2)(A) (listing required contents of certification). Mr. Guo's engagement agreement with the Rosen Firm as putative class counsel was "incorporated by reference" into his certification "upon execution by the [Rosen Firm]." (ECF 1-1 at 1.) Only the certification was filed, not the retention agreement, of which it was a part, and it is unclear whether any written engagement was entered into with Mr. Guo or when.

[3] *See Jurkowski v. Molycorp, Inc.*, 13-cv-5697, 2014 WL 12792750, at *3 (S.D.N.Y. Apr. 2, 2014) (denying lead plaintiff motion because applicant "sold put options before the class period").

case" (ECF 16 at 4:3-6), but asked the Court for additional time to consider the matter, which Judge Cho allowed (*id.* at 16:22-25). Following the hearing, the parties met and conferred and submitted a joint status report proposing that HFC withdraw its motion and the Court extend the time for other Tyson stockholders "who have standing" to submit lead plaintiff applications. (ECF 17 at 1.) The Court agreed and extended the deadline to September 30, 2021. (Aug. 24, 2021, text order.)

On the last day permissible, the Rosen Firm filed an application to appoint Chen Porat and Keagan Marcus (collectively, "Movants") as co-lead plaintiffs (the "Motion"). (ECF 18.) In support of the Motion, the Rosen Firm filed a memorandum of law that was *identical* to the papers submitted in support of HFC's motion in all material respects, repeating that Movants had "communicated with" counsel and suffered "substantial financial losses" on their Tyson investments. (ECF 19 at 6.) Neither Movant submitted a sworn declaration attesting to their investment expertise or commitment to the putative class, instead tendering form certifications identical to the bare-bones certification submitted by Mr. Guo. (ECF 19-2.) Again, no other Tyson stockholder stepped forward.

Movants' application was deficient as well because while Mr. Porat and Mr. Marcus claimed to have suffered only $156.25 and $166.95, respectively, (ECF 19-3 at 2), in truth, they suffered no cognizable losses at all:

- Mr. Porat purchased a total of 75 shares during the Class Period, selling 40 shares on November 3, 2021, and retaining 35 shares. (*Id.*) Mr. Porat suffered no loss on the 40 shares of Tyson stock he sold because he was an "in and out trader" who bought and sold those shares at allegedly inflated prices before the fraud was allegedly revealed. (ECF 20 at 3.) As to Mr. Porat's 35 retained shares, he purchased them below the 90-day lookback price and therefore suffered no compensable harm. (*Id.*)

- Mr. Marcus purchased all of his shares on December 14, 2020 (*id.*), months into the COVID-19 pandemic and *the day before* the end of the putative Class Period. (ECF 20 at 4.) By that point, a host of information respecting Tyson's response to the pandemic had already been disseminated to the market and reflected in the price of Tyson's stock. (*Id.* at

5.) Nothing "new" happened on the following day, when the Stringer Letter was published, since Mr. Stringer relied on already public information in requesting that the SEC investigate.[4]

The Motion also raised a number of other troubling questions which suggested that the case was the kind of lawyer-driven exercise the PSLRA was designed to prevent:

- Mr. Marcus' certification was dated February 3, 2021, months before the Rosen Firm told the court that there would be "no case" if HFC's motion were denied and requested more time to propose an alternative applicant. (ECF 19-2 at 5, 16 at 4:3-6.) There was thus no need to reopen the lead plaintiff process.

- The Rosen Firm declined to disclose whether Mr. Marcus continued to hold his Tyson shares throughout the lookback period, despite its obvious relevance.[5] Without such information, it was not possible to tell whether Mr. Marcus suffered a loss on his investment and lacked standing to sue.[6]

On September 30, 2022, Judge Cho issued a Memorandum and Order (ECF 26) denying Movants' motion to be appointed lead plaintiff and to appoint the Rosen Firm as their counsel (the "Decision"). (ECF 26.) Judge Cho held that the Movants failed to preliminarily satisfy Rule 23(a)'s adequacy requirement because their *combined* total loss of only $323.20 was "unlikely to provide the kind of incentive for close supervision of counsel that the PSLRA contemplates." (*Id.* at 12 (citing *Bosch v. Credit Suisse Grp. AG*, 22-cv-2477, 2022 WL 4285377, at *5 (E.D.N.Y. Sept. 12, 2022)).) Judge Cho noted, however, that Movants were free to pursue individual claims against Tyson for their claimed losses, if they so choose. (*Id.*) This appeal followed. (ECF 27.)

## ARGUMENT

### I.     The Applicable Legal Standard

Rule 72(a) of the Federal Rules of Civil Procedure, which governs a district judge's review

---

[4] *See, e.g.*, Stringer Letter at 5 n.8 (citing Apr. 22, 2020 and Jul. 22, 2020 articles from CNN and other news outlets), at 5 n.9 ("These were reported in a number of media stories."), and at 6 n.13 (citing Apr. 29, 2020 and Jun. 29, 2020 articles concerning the same allegations in Mr. Stringer's Letter).

[5] This was consistent with the Rosen Firm's decision to withhold information critical to the lead plaintiff analysis in this and at least one other proceeding where the applicant was a put option writer. (*See* ECF 15 & *supra* at 2-4.)

[6] Defendants also raised issues with respect to whether Mr. Marcus' certification conformed with all applicable legal requirements. (ECF 20 at 4 nn.5-6.)

of a magistrate judge's non-dispositive pretrial rulings, provides that "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). An order is "clearly erroneous if, based on all the evidence, a reviewing court 'is left with the definite and firm conviction that a mistake has been committed,'" *Storms v. United States*, 13-cv-0811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)), and "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Weiner v. McKeefery*, 11-cv-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (citation and quotation omitted). "This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused [his] discretion." *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (quotations and citations omitted); *see also* Charles A. Wright, *et al.*, *Federal Practice and Procedure* (3d ed.) § 3069 ("it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge"). Movants' objections fail to meet this stringent standard.

## II.    Judge Cho's Decision Is Consistent with Established Precedent

Movants claim that Judge Cho's decision was "clearly erroneous or contrary to law" because the "plain language" of the PSLRA and the Federal Rules of Civil Procedure do not "establish a minimum amount of loss required to show adequacy." (Obj. at 5.) According to Movants, it is sufficient if applicants submit "declarations certifying their willingness to serve as lead plaintiffs and recognizing their role as lead plaintiffs on behalf of other class members in directing the action," which Judge Cho acknowledged Movants submitted here. (*Id.*) Movants are mistaken.

Although the PSLRA identifies no specific minimum loss requirement, courts have repeatedly declined to appoint lead plaintiff applicants where their losses were inadequate to incentivize them to meaningfully supervise the action and effectively oversee counsel. *See, e.g.*, *Bosch*, 2022 WL 4285377, at \*5 (denying applicant who claimed \$621 in losses); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) (denying applicant whose claimed "dollar amount" and "financial interest" were "minimal to the point of being *de minimis*"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 310 (S.D.N.Y. 2001) (denying applicant with "modest stake"); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999) (denying applicant group with "relatively small holdings").[7]  This Court need go no further as it is well-settled that there can be no clear error where other courts have reached the same conclusion. *See Kahn v. NYU Med. Ctr.*, 06-cv-13455, 2008 WL 190765, at \*1 (S.D.N.Y. Jan. 15, 2008), *aff'd*, 328 F. App'x 758 (2d Cir. 2009); *accord Haas v. Verizon N.Y., Inc.*, 13-cv-8130, 2015 WL 5785023, at \*9 (S.D.N.Y. Sept. 30, 2015).

Movants attempt to distinguish many of these cases on their facts.  With respect to *Goldman* and *Razorfish,* for example, they argue that the applicants there were not denied because "the losses were too small" but because those cases involved "multiple competing movants." (Obj. at 7.)  That is untrue.  Both cases turned on whether the applicants were adequately incentivized to represent the class given their modest losses.  *See, e.g.*, *Razorfish*, 143 F. Supp. 2d at 310 (applicant's "modest stake" was "unlikely to provide the kind of incentive for close supervision of counsel" or "to strongly negotiate counsel's fees"); *Goldman Sachs*, 274 F.R.D. at 477 (appointing the

---

[7] *Accord In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 537 (N.D. Ohio 2001) (denying applicant due to its "relatively small financial stake in this action"); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 221 (D.N.J. 1999) (denying applicants whose "relatively small interest" was not "strongly aligned with the shareholder class"); *In re Third Ave. Mgmt. LLC Sec. Litig.*, 16-cv-2758, 2016 WL 2986235, at \*3 (S.D.N.Y. May 13, 2016) (denying applicant whose "financial interest" was "minimal"); *Cohen v. Luckin Coffee Inc.*, 20-cv-1293, 2020 WL 3127808, at \*8 n.10 (S.D.N.Y. June 12, 2020) (denying applicant for whom "small financial interest of \$5,044 weigh[ed] heavily against" appointment).

applicant with a "*de minimis*" interest "would put an individual plaintiff in charge of a litigation that Congress has instructed should be guided by institutional investors").  Movants likewise attempt to distinguish *Bosch* on the basis that the applicant's lack of adequacy was not based on his *de minimis* losses alone.  While there were other issues bearing on the applicant's adequacy besides his small losses,[8] those do not detract from *Bosch*'s principal holding that his "extremely modest stake (at most, $621) is unlikely to provide the kind of incentive for close supervision of counsel that the PSLRA contemplates." *Bosch*, 2022 WL 4285377, at *5.[9]

Movants also press the fact that other courts have appointed lead plaintiff applicants with minimal losses, but those cases were decided on different facts and cannot establish clear error. For instance, in *Thomas v. China Techfaith Wireless Commc'n Tech. Ltd.*, 19-cv-0134, 2019 WL 11623934, at *3 (E.D.N.Y. May 2, 2019), the movant's losses totaled $7,337, more than 22 times Movants' combined claimed losses.  *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 20-cv-4953, 2020 WL 10692524, at *2 (S.D.N.Y. Sept. 24, 2020), is equally inapposite because, despite his small losses, the movant otherwise demonstrated "sufficient interest" by "fil[ing] the first complaint", "caus[ing] to be published the notice of the litigation", and undertaking other "steps . . . to prepare and file this action."  By contrast, Movants here accomplished nothing, merely lending their names to ongoing litigation.[10]

### III. Movants Have Not Otherwise Met Their Heavy Burden to Show that the Decision Was Clearly Erroneous or Contrary to Law

None of Movants' other arguments satisfy their "heavy burden" under Rule 72(a) either.

---

[8] There, applicant's retainer agreement (which was not entered into until the Court ordered its production) contained fee provisions that favored counsel and were not in the class's best interests.  If Movants wish to distinguish *Bosch* on these grounds, they should be required to produce their engagement agreements with the Rosen Firm as well.

[9] Defendants alerted the Court to the *Bosch* decision in a notice of supplemental authority (ECF 25), yet Movants never responded to Defendants' notice or the substantive points it raised, despite having ample opportunity to do so.

[10] In any event, even if the law were "unsettled," that is not sufficient to show Judge Cho's order was "contrary to law." *Mfg. Admin. and Mgmt. Sys., Inc. v. ICT Grp., Inc.*, 212 F.R.D. 110, 119 (E.D.N.Y. 2002).

<u>First</u>, Movants seem to believe that they are somehow entitled to be appointed lead

plaintiffs simply because they complied with the Reform Act's certification requirement and

allegedly suffered some loss.  (Obj. at 2, 5.)  That extreme position is entirely without support and

should be rejected:

- Nothing in the PSLRA provides for any such right and Movants do not point to any language from the statute suggesting otherwise.

- Nothing in the legislative history of the PSLRA supports such a right either.  To the contrary, the PSLRA was enacted to encourage class members "with large amounts at stake to step forward" to lead private securities litigations, *Silverberg v. DryShips Inc.*, 17-cv-4547, 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018), not to reward early filers with small losses.[11]

- Courts have "considerable discretion in determining the adequacy of lead plaintiffs under the PSLRA," which is completely inconsistent with the notion that applicants enjoy some automatic right to appointment in the absence of a competing applicant.  *See id.*[12]

- The cases hold that a movant who fails to satisfy the requirements of Rule 23 cannot be appointed lead plaintiff under the PSLRA, even if no other movant satisfies those requirements.  *See, e.g.*, *Finocchiaro v. NQ Mobile, Inc.*, 15-cv-6385, 2016 WL 7031613, at *3 (S.D.N.Y. Dec. 1, 2016) (denying sole lead plaintiff motion by movant who "cannot adequately represent the class"); *Bosch*, 2022 WL 4285377, at *5 (same); *Century Bus. Servs.*, 202 F.R.D. at 537 (same).

- The two cases cited by Movants (Obj. at 5) do not establish otherwise because both are clearly distinguishable on their facts.  *See City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, 19-cv-5530, 2019 WL 13167890, at *6 n.9 (E.D.N.Y. Dec. 23, 2019) (granting lead plaintiff motion where applicant provided the court with additional information regarding its adequacy);[13] *Kasilingam v. Tilray, Inc.*, 20-cv-3459, 2020 WL 4530357, at *1, *3 (S.D.N.Y. Aug. 6, 2020) (granting lead plaintiff application where

---

[11] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998) ("By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'") (quoting H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730).

[12] *See also Schaffer v. Horizon Pharma PLC*, 16-cv-1763, 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016) (court's "broad discretion" to administer class actions under Rule 23 "undoubtedly applies to appointment of a lead plaintiff under the PSLRA"); *In re Synergy Pharms. Inc. Sec. Litig.*, 18-cv-0873, 2020 WL 5763830, at *1, *5 (E.D.N.Y. Sept. 28, 2020) (Donnelly, J.) (denying appeal of lead plaintiff decision because it was within the magistrate judge's discretion).

[13] *See id.* (lead plaintiff "participated in a conference call to discuss, among other things, the need for the action to be driven by sophisticated institutional investors intent on maximizing recovery for the Class; protocols for ensuring that the claims of the Class will be efficiently and zealously prosecuted; and the status of counsel's ongoing investigation," and it served as court-appointed lead plaintiff in another securities class litigation within the past two years).

movant allegedly lost $2.3 million).

Second, Judge Cho did not misconstrue the standard under the PSLRA by conflating "the largest financial interest" with "a large financial interest", as Movants also wrongly contend.  (Obj. at 6.)  Rather, Judge Cho first determined whether Movants had the largest financial interest within the meaning of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) and concluded that they did.  (Decision at 7-8.)  Judge Cho then turned to the question of whether Movants had satisfied Rule 23 as required under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)—and in particular, whether they had demonstrated "sufficient interest in the outcome to ensure vigorous advocacy," a wholly separate inquiry.  That reasoning was entirely in keeping with the law of this District and provides no grounds for reversal. *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, 10-cv-0864, 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011) (movant must satisfy "all three prongs of the PSLRA's requirements for lead plaintiff").

Third, Movants' claim that Judge Cho improperly "speculated" that they lacked sufficient financial interest to incentivize them to monitor counsel's performance and control the litigation is baseless too.  (Obj. at 2.)[14]  Judge Cho did not engage in unwarranted "speculation" in concluding that a combined *claimed* loss of $323 was insufficient to incentivize Movants to act in the best interests of the putative class, particularly where (i) Movants' counsel inaccurately described such losses as "substantial" and (ii) Movants put forth no further information substantiating their adequacy.

Finally, Movants' policy arguments cannot justify reversal under Rule 72(a) and are wrong

---

[14] Movants appear to suggest that Judge Cho committed reversible error by allowing Defendants to be heard.  (Obj. at 1-2 (citing cases holding that *prima facie* proof of adequacy may be rebutted only by class members).)  Multiple cases in this Circuit and District hold otherwise. *See Finocchiaro*, 2016 WL 7031613, at *2 ("[I]n the absence of a challenge by any plaintiff, defendants certainly have standing: whether such standing is viewed as formal or not, this Court welcomes submissions that inform its decision."); *In re Luxoticca Grp., S.p.A. Sec. Litig.*, 01-cv-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004) (same); *City of Ann Arbor Emps' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, 08-cv-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009) (same).

regardless. *See Holsinger v. Wolpoff & Abramson, L.L.P.*, 05-cv-2075, ECF 35 at 2 (N.D. Cal.
Mar. 23, 2006) ("policy arguments" cannot "establish that the interim order is clearly erroneous or
contrary to law").[15]   For instance, they argue the Decision was clearly erroneous and contrary to
law because the class action device was intended to allow small-loss plaintiffs to seek relief since
they would otherwise be disincentivized to pursue individual claims.  (Obj. at 8.)  That is not the
case with securities class actions, however, which the courts and Congress have long recognized
have been subject to abuse.  In fact, the PSLRA was enacted to prevent class actions that are
"initiated and controlled by the lawyers and appear[] to be litigated more for their benefit than for
the benefit of the shareholders they ostensibly represent[]." *Iron Workers Loc. No. 25 Pension
Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 463 (S.D.N.Y.
2009); *accord Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 n.8 (E.D.N.Y. 2011)
(PSLRA enacted to eliminate situations where "a named class representative has a minimal
financial stake in the case and acts primarily as a tool of the lawyers").[16]

Movants also argue that the Decision creates an "unworkable rule" or a "slippery slope"
(Obj. at 2, 7) because it supposedly leaves open how a court should "determine what financial
interest is large enough" to ensure that the applicant is adequate (Obj. at 2-3), requires courts to
"delve into an individual's net worth or current financial condition to determine if a loss is
sufficient" (*id.* at 3), and potentially implicates loss calculations that are "difficult" in securities
class and typically involve expert witnesses (*id.* at 7).  But the law *already* requires courts to make

---

[15] *Accord First Nat. Bank of Louisville v. Lustig*, 89-cv-0202, 1989 WL 126511, at *1 (E.D. La. Oct. 18, 1989);
*Claybrooks v. Am. Broad. Cos., Inc.*, 12-cv-0388, 2013 WL 1435050, at *3 (M.D. Tenn. Apr. 9, 2013).

[16] H.R. Rep. No. 104-369 at 32-34 (1995) (The PSLRA "protects investors who join class actions against lawyer-
driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the
issuer," since "class members with large amounts at stake will represent the interests of the plaintiff class more
effectively than class members with small amounts at stake."); *accord Greebel v. FTP Software, Inc.*, 939 F. Supp.
57, 58 (D. Mass. 1996) ("the principal impetus underlying [the PSLRA] was the belief that the plaintiff's bar had
seized control of class action suits, bringing frivolous suits on behalf of only nominally interested plaintiffs in the
hope of obtaining a quick settlement").

such a sufficiency assessment. *See, e.g., In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y.1998) (to assess adequacy, court must consider if the movant "has sufficient interest in the outcome of the case to ensure vigorous advocacy").[17]  And, as Movant's own authorities show, courts regularly conduct such assessments without the need to probe individual movant's personal financial situations or resort to complex damages analyses. *See, e.g., Kirkland Lake Gold*, 2020 WL 10692524, at *2 (movant with small loss nevertheless had "sufficient interest in the outcome of the case" due to other factors).  If anything, it is Movants' proposal that is truly "unworkable" since it would entitle an applicant who lost as little as a penny to sue, provide no protection against lawyer-driven litigation, and turn the adequacy requirement on its head.  That is not what Congress intended.

## IV.     The Record Contains Ample Additional Grounds to Affirm the Decision

It is well established that, on an appeal of a non-dispositive motion under Rule 72(a), a district court "may affirm on any basis supported by the record, including grounds upon which the [Magistrate Judge] did not rely." *Schreiber v. Friedman*, 15-cv-6861, 2017 WL 11508067, at *1 (E.D.N.Y. Aug. 15, 2017) (alteration in original); *see also Joffe v. King & Spalding LLP*, 17-cv-3392, 2019 WL 4722673, at *5 (S.D.N.Y. Sept. 25, 2019) (same).  Should the Court deem it appropriate to look beyond Judge Cho's well-reasoned Decision, the record here strongly supports his determination that the Motion was properly denied:

- Movants are hardly in a position to claim that their small claimed losses should have been sufficient when in fact they suffered no cognizable losses at all.[18]

- Movants never submitted declarations showing that they would control counsel and faithfully discharge their fiduciary obligations to the class, as other lead plaintiff applicants

---

[17] *See also Kehoe v. 3D Sys. Corp.*, 21-cv-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021) (same).

[18] Movants' own authorities confirm that the Court can and should affirm denial of their application on loss causation grounds at the lead plaintiff stage. *See, e.g.*, ECF 27 at 4-5 (citing *In re Comverse Tech., Inc. Sec. Litig.*, 06-cv-1825, 2007 WL 680779, at *3-4, *8 (E.D.N.Y. Mar. 2, 2007) (reversing, at lead plaintiff stage, magistrate judge who "erred by improperly including in his calculation losses for which [movant] cannot recover in this action")).

have done.[19]   Instead, they submitted bare-bones form declarations that parroted the minimum statutory requirements under the PSLRA.

- The record shows that this is lawyer-driven litigation, as evidenced by the failure of any competing stockholder to seek lead plaintiff status, and by counsel's apparent determination to pursue this action at all costs, including by (i) filing a complaint by a stockholder who lacked standing; (ii) filing its first lead plaintiff application on behalf of an applicant who lacked standing; (iii) seeking more time to find an additional applicant for lead plaintiff when one had already been engaged; (iv) filing a second lead plaintiff motion on behalf of two stockholders neither of whom suffered any compensable loss; and (v) withholding requested information directly relevant to the question Judge Cho was obliged to address.  (*See supra* at 2-4.)

## CONCLUSION

For the foregoing reasons, the Court should overrule Movants' Objections, allow Movants

to seek relief individually (should they wish), and grant Defendants such other relief it deems just

and proper.

Dated:  New York, New York
         October 28, 2022

                                          Respectfully submitted,

                                          /s/ *Mary Eaton*
                                          Mary Eaton
                                          Meredith Kotler
                                          Nicholas A. Caselli
                                          FRESHFIELDS BRUCKHAUS
                                          DERINGER US LLP
                                          601 Lexington Avenue, 31st Floor
                                          New York, New York  10022
                                          mary.eaton@freshfields.com
                                          meredith.kotler@freshfields.com
                                          nicholas.caselli@freshfields.com
                                          Telephone: (212) 277-4000
                                          Fax: (212) 277-4001

                                          *Attorneys for Defendants*

---

[19] *See, e.g.*, *Henry Schein*, 2019 WL 13167890, at *6 n.9; *Tilray, Inc.*, 2020 WL 4530357, at *3.