# EXHIBIT 1

2022 WL 17336586
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

RYAN MCCORMACK, Plaintiff,

v.

DINGDONG (CAYMAN)
LTD., et al., Defendants.

22-CV-7273 (VSB)
|
Filed 11/30/2022

**Attorneys and Law Firms**

Appearances:

Thomas Livezey Laughlin, IV, Scott + Scott, L.L.P., New York, NY, Counsel for Plaintiff

Matthew Osborn Solum, Kirkland & Ellis LLP, New York, NY, Counsel for Defendant Dingdong (Cayman) Ltd.

Joanna Andrea Diakos, Priya Chadha, K&L Gates LLP, New York, NY, Counsel for Defendants Colleen A. De Vries and Cogency Global Inc.

**OPINION & ORDER**

Vernon S. Broderick United States District Judge

 **\*1**  Plaintiff Ryan McCormack ("McCormack") brings this securities fraud action against Dingdong (Cayman) Ltd. ("Dingdong") and several of its officers and underwriters, alleging violations of Sections 11, 12, and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77-l(a)(2), and 77*o*. Before me is a motion from McCormack for appointment as lead plaintiff and approval of his selection of lead counsel. Because the notice in this case was deficient, and because McCormack has not made a preliminary demonstration that he will adequately protect the interests of the class, his motion is DENIED.

**I. Factual Background and Procedural History**[1]
Dingdong is an e-commerce company based in China that sells fresh groceries.[2] (*See* Compl. ¶¶ 3, 14.) On June 29, 2022, Dingdong conducted an initial public offering ("IPO") in New York, issuing more than 4 million shares at $23.50 per share. (*See id.* ¶¶ 1, 3, 4, 42.) In connection with its IPO, Dingdong filed a F-1 registration statement ("Registration Statement") with the Securities and Exchange Commission ("SEC"). (*See id.* ¶¶ 1, 41, 42.) The gravamen of McCormack's lawsuit is that the Registration Statement contained material omissions and misrepresentations about "Dingdong's commitment to ensuring the safety and quality of the food it distributes to the market." (*Id.* ¶ 6; *see also id.* ¶¶ 41–53.) McCormack claims that despite promising "stringent quality control," Dingdong was "selling, for example, dead fish to customers while marketing it as live fish and recycling vegetables that were past their sell-by date." (*Id.* ¶¶ 5, 6.) McCormack further claims that "when the truth of Defendants' misrepresentations and omissions began to emerge, the price of Dingdong's [shares] suffered sharp declines." (*Id.* ¶ 55.) For instance, after *Beijing News* reported on March 17, 2022 that "Dingdong replaced labels on expired vegetables and sold frozen fish products as fresh," Dingdong's stock "declined 10.8%" to $3.79 per share. (*Id.* ¶¶ 55, 56.)

On August 25, 2022, McCormack filed a class action complaint ("Complaint") against Dingdong; Dingdong Board of Directors members Changlin Liang, Le Yu, Yi Ding, Eric Chi Zhang, Weili Hong, Philip Wai Lap Leung, and Colleen A. De Vries (together, "Individual Defendants"); Dingdong underwriters Morgan Stanley & Co. LLC, BofA Securities, Inc., Credit Suisse Securities (USA) LLC, Mission Capital Management Limited, HSBC Securities (USA) Inc., Futu Inc., and Tiger Brokers (NZ) Limited, (together, "Underwriter Defendants"); and Dingdong's authorized United States representative Cogency Global Inc. (altogether, "Defendants"). (*See id.* ¶¶ 14–40.) McCormack alleges that the Individual Defendants are liable because they "each reviewed, contributed to, signed, or authorized the signing of" the Registration Statement and related documents. (*Id.* ¶ 22.) McCormack also alleges that the Underwriter Defendants knew or should have known about the material omissions and misrepresentations in the Registration Statement and yet continued to solicit investors to buy Dingdong IPO shares. (*See id.* ¶¶ 32–38.)

 **\*2**  The same day that McCormack filed his Complaint, McCormack's counsel, Scott+Scott Attorneys at Law LLP ("Scott+Scott"), published a notice of the lawsuit on *Business Wire*. (Laughlin Decl. Ex. A.) The notice says that Scott+Scott "filed a securities class action against Dingdong ... its U.S. representatives, certain Dingdong directors and officers and the underwriters of Dingdong's June 2021 initial public

offering ("IPO")...." (*Id.* at 2.)[3] The notice says in bold, "If you purchased Dingdong American Depository Shares ('ADS') pursuant and/or traceable to the Company's IPO on or about June 28, 2021, you are encouraged to contact Scott +Scott attorney Jonathan Zimmerman at (888) 398-9312 for more information." (*Id.*) The notice gives some additional details about the factual allegations in the lawsuit. (*See id.*) The notice then advises that the "Lead Plaintiff deadline" is "October 24, 2022" and that "[a]ny member of the proposed Class may seek to serve as Lead Plaintiff through counsel of their choice, or may choose to do nothing and remain a member of the proposed Class." (*Id.* at 3.) Under the heading, "What You Can Do," the notice again advises, "If you purchased Dingdong ADS pursuant and/or traceable to the Company's IPO, or if you have questions about this notice or your legal rights, you are encouraged to contact attorney Jonathan Zimmerman at (888) 398-9312 or zimmerman@scott-scott.com." (*Id.*)

On October 26, 2022, McCormack filed a motion seeking appointment as lead plaintiff and approval of his selection of lead counsel, (Doc. 20), along with a memorandum of law in support, (Pl.'s Mem.), and an affidavit and exhibits in support, (Laughlin Decl.). In support of his motion seeking appointment as lead plaintiff, McCormack attests that on October 20, 2021, he bought 40 shares of Dingdong at $24.96 per share, and on January 10, 2022, he sold 40 shares of Dingdong at $12.35 per share, resulting in a $504.40 loss. (*See* Laughlin Decl. Ex. B; *see also* Compl. Sched. A.) No other Dingdong shareholder has filed a motion to be appointed lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i). On November 14, 2022, McCormack filed a notice of unopposed motion indicating that no one has opposed his motion seeking appointment as lead plaintiff. (Doc. 23.)

## II. Discussion

### A. *Applicable Law*

The procedures set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u–4 and 77z–1, govern the appointment of lead plaintiff in securities class actions. The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v.*

*Jinkosolar Holding Co.*, No. 11 Civ. 7133 JPO, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (internal citation omitted); *see also* H.R. Rep. 104-369 at 32–33 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731–32; *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998). Before its enactment, "professional plaintiffs" overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)). Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z–1(a)(3)(B)(i).

### 1. Notice

As an initial matter, the PSLRA requires that the plaintiff publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service" within twenty days from the date that the complaint is filed. *Id.* § 77z-1(a)(3)(A)(i). The notice must inform the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff ...." *Id*. "[T]he Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff ... to come forward and take control of the litigation." *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577 (D.N.J. 2001); *see also Somogyi v. Organogenesis Holdings Inc.*, No. 21-CV-6845 (DG)(MMH), 2022 WL 3654646, at *2 (E.D.N.Y. Aug. 25, 2022).

### 2. Appointment of Lead Plaintiff

**\*3** There is a rebuttable presumption that the appropriate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the

Federal Rules of Civil Procedure. 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I).

In this District, courts use the four-factor test first adopted in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), when determining the party with the largest financial interest: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate financial losses suffered. *See, e.g.*, *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014) (applying the *Lax* test); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (same). Of the four factors, financial loss is considered the most significant factor. *See Reitan*, 68 F. Supp. 3d at 395; *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the *Lax*-style elements." (citation omitted)).

Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *5 n.6 (S.D.N.Y. Mar. 2, 2007). In securities fraud cases, courts must consider only those losses that a plaintiff incurred after a misrepresentation is revealed to the public. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N. Y 2015); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272 (S.D.N.Y. 2015); *see also Comverse*, 2007 WL 680779, at *5 ("[W]here (as here) it is clear from the face of the pleadings that most of [movant's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage."). Any losses incurred based on "in-and-out" trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered. *See Topping*, 95 F. Supp. 3d at 618 ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include 'losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.' " (quoting *Comverse*, 2007 WL 680779, at *4)). This is consistent with the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544

U.S. 336, 345 (2005), where the Court found that securities actions only provide recoveries for "economic losses that misrepresentations actually cause." Thus, any losses resulting from sales of shares before a company's misconduct is revealed are not considered for the purpose of loss calculation "because those losses cannot be proximately linked to the misconduct at issue." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (quoting *Comverse*, 2007 WL 680779, at *4).

**\*4** The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of a class certification." *eSpeed*, 232 F.R.D. at 102. The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements. *Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *eSpeed*, 232 F.R.D. at 102.

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ.6766IDAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50. While the claim need not be identical, it must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, No. 11 CIV. 5382 JFK, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). "In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and experience of the proposed lead plaintiff,

(2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members."*Blackmoss Investments, Inc. v. ACA Cap. Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (citations omitted); *see also LaBranche & Co.*, 229 F.R.D. at 417 ("While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class.").

### B. *Application*

#### 1. Notice

On August 25, 2022, the same day the Complaint was filed, Scott+Scott caused a notice to be published in *Business Wire*. (Laughlin Decl. Ex. A.) The notice is materially deficient for several reasons. First, the notice does not indicate "the purported class period," as required by the PSLRA. 15 U.S.C. § 77z-1(a)(3)(A)(i). This omission is particularly problematic since the body of the Complaint does not specifically allege a class period either, nor does it contain the terms "class period" or "loss." (*See generally* Compl.) In his sworn certification attached to the Complaint, *see* 15 U.S.C. § 77z-1(a)(2)(A), McCormack includes a loss chart that indicates the "Class Period" is "10/20/2021 to 01/10/2022," reflecting the fact that McCormack bought 40 shares on October 20, 2021, and sold 40 shares on January 10, 2022. (Compl. Sched. A.) However, in support of his motion seeking appointment as lead plaintiff, McCormack includes another loss chart that instead says the "Class Period" is "06/29/2021 to 08/25/2022," reflecting the time from which the IPO began to the filing of the instant lawsuit. (Laughlin Decl. Ex. B.) Notably, when McCormack sold his shares—eight months before the commencement of the lawsuit—Dingdong shares were still trading at $12.35 per share. (*See* Compl. Sched. A.) Two months after McCormack had sold his shares, the *Beijing News* reported that Dingdong was being investigated for food safety violations, and Dingdong's share price fell to $3.79 per share. (*See id.* ¶¶ 55–56.) By the time the lawsuit was filed on August 25, 2022, the price had fallen to $2.51 per share. (*See* Compl. ¶ 57.) It seems likely that there is another potential lead plaintiff who did not sell Dingdong shares when McCormack did, and thus suffered more substantial losses than McCormack. However, because the notice does not clearly inform putative class members of the relevant time period of the claims at issue, it failed to "encourag[e] the most

adequate plaintiff ... to come forward." *Chubb Corp.*, 127 F. Supp. 2d at 577.

**\*5** Second, the notice does not adequately inform purported class members of their rights. Although the notice informs potential lead plaintiffs that "[a]ny member of the proposed Class may seek to serve as Lead Plaintiff through counsel of their choice," (Laughlin Decl. Ex. A at 3), the notice does not make clear that "any member of the purported class may move the court to serve as lead plaintiff," 15 U.S.C. § 77z-1(a)(3)(A)(i), or otherwise provide any information about how a member of the purported class might go about seeking appointment as lead plaintiff. Courts have found that PSLRA notices are deficient where, for example, they do not include "the docket number, the names of the plaintiffs, the name of the judge presiding over the case, and other similarly fundamental information about the plaintiff's claim" that could help the purported class member identify the case. 7 Newberg and Rubenstein on Class Actions § 22:28 (6th ed.) (collecting cases). The notice in this case contains none of this information. (*See* Laughlin Decl. Ex. A.) Instead, the notice repeatedly directs members of the purported class to contact Scott+Scott with questions. Courts have found PSLRA notices defective "when the notice instead appears intended to funnel potential lead plaintiffs through the initial law firm ... rather than to notify" purported class members of their legal rights, as the PSLRA intended. 7 Newberg and Rubenstein on Class Actions § 22:28 (6th ed.) (collecting cases); *see also Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275, 278–79 (N.D. Tex. 2001) ("[T]he notice implies that potential lead plaintiffs should contact the law firm ... in order to participate in the case.... This result is also clearly contrary to the intent of the PSLRA to permit plaintiffs greater control over the litigation instead of permitting lawyer-driven litigation."). By repeatedly instructing purported class members to contact Scott+Scott, rather than informing them of their right to "move the court to serve as lead plaintiff," the notice evades both the letter and the spirit of the law.

Some courts have denied motions for appointment as lead plaintiff because of the movant's failure to comply with the PSLRA notice requirements, and I am inclined to follow their lead. *See King v. Livent, Inc.*, 36 F. Supp. 2d 187, 190 (S.D.N.Y. 1999); *Chubb Corp.*, 127 F. Supp. 2d at 582. However, I need not decide whether the deficient notice, standing alone, justifies the denial of McCormack's motion because I also find that McCormack fails to make a preliminary demonstration that he will adequately protect the interests of the class.

**2. Appointment of Lead Plaintiff**

McCormack essentially argues that he should be appointed lead plaintiff because no other Dingdong shareholder has sought appointment. (*See, e.g.*, Pl.'s Mem. 4, 5.) McCormack filed the Complaint in this action, and because no one else has come forward, he has the largest financial stake by default. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Under the law, McCormack is "presumptively most adequate." *Id.* § 78u-4(a)(3)(B)(iii)(II).

However, "it is well settled that the Court is obligated to evaluate the requirements of the PSLRA, even [if a movant's lead plaintiff] motion is unopposed." *Bosch v. Credit Suisse Grp. AG, Inc.*, 2022 WL 4285377, at *6 (E.D.N.Y. Sept. 12, 2022) (collecting cases). Indeed, courts in this Circuit have denied uncontested lead plaintiff motions where the movant does not satisfy the adequacy requirement of Rule 23(a). For example, in *Guo v. Tyson Foods, Inc.*, Magistrate Judge James R. Cho denied a motion for appointment of lead plaintiffs where two movants together alleged a "combined total loss of $323.20," which Judge Cho deemed "nominal." No. 21-CV-00552-AMD-JRC, 2022 WL 5041798, at *5 (E.D.N.Y. Sept. 30, 2022). Likewise, in *Bosch*, Magistrate Judge Roanne L. Mann ruled that a plaintiff did not "preliminarily satisfy the adequacy requirement of Rule 23(a)" where the plaintiff claimed only $621 in losses. 2022 WL 4285377, at *4. Judge Mann found that although the plaintiff "submitted a declaration attesting to his understanding of the responsibilities of a lead plaintiff under the PSLRA and his willingness to oversee the litigation and counsel," he "nevertheless lack[ed] a sufficient financial interest in the outcome of the case to incentivize him to monitor counsel's performance and control the litigation on behalf of the putative class." *Id.*

Here, McCormack claims only $504.40 in losses. (*See* Laughlin Decl. Ex. B; *see also* Compl. Sched. A.) In the realm of securities litigation, this is a token amount. *See Bosch*, 2022 WL 4285377, at *4; *Guo*, 2022 WL 5041798, at *5. Moreover, McCormack does not claim that his losses are similar to, or larger than, the losses of other class members. (*Cf.* Compl. ¶ 8 ("Plaintiff and other Class members have suffered tens of millions of dollars in damages.").) Additionally, McCormack has submitted only a pro forma certification that includes no details about his background, years of investing experience, or other indicia of sophistication. (*See* Compl. Ex. 1.) "[A]mple case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication." *In re HEXO Corp. Sec. Litig.*, No. 19 CIV. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020). For these reasons, McCormack has "failed to persuade this Court that [he has] sufficient interest in the litigation to 'vigorously' pursue the class claims and adequately represent the interests of class members." *Guo*, 2022 WL 5041798, at *6.

**\*6** Furthermore, as a general matter, "losses that may have incurred before a company's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in the litigation." *Topping*, 95 F. Supp. 3d at 617–18 (internal quotation marks omitted) (collecting cases). McCormack has not clearly pleaded at what time "the truth of Defendants' misrepresentations and omissions began to emerge." (Compl. ¶ 55.) However, McCormack sold his shares months before the one corrective disclosure alleged in the complaint, the *Beijing News* report on March 17, 2022. (*See id.*; *see also id.* Sched. A.) Therefore, there is a risk that McCormack's losses will not be recoverable, which renders him unable to "fairly and adequately protect the interest of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Courts in this circuit have repeatedly recognized that "Congress enacted the PSLRA in 1995 in response to perceived abuses in securities fraud class actions," and for that reason, "the PSLRA provides for extensive judicial involvement in the process of selecting a lead plaintiff and lead counsel in a securities class action." *Peters*, 2012 WL 946875, at *4. In other words, Congress did not intend for district courts to rubber stamp motions brought by inadequate plaintiffs, even if unopposed. Because I find that McCormack "will not fairly and adequately protect the interest of the class," this case cannot proceed as a class action, 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa), and McCormack's motion is denied. *See also Bosch*, 2022 WL 4285377, at *6 ("Under the terms of the statute, the Court cannot appoint as lead plaintiff a movant who fails to satisfy the requirements of Rule 23, even in the absence of any competing motion."). However, McCormack may still pursue his claims on an individual basis. *Guo*, 2022 WL 5041798, at *6 (collecting cases).

**III. Conclusion**

For the foregoing reasons, McCormack's motion for appointment as lead plaintiff and approval of his choice of lead counsel is DENIED.

As previously ordered, within 21 days, the parties shall submit a proposed schedule for the filing of any amended complaint and subsequent response. (Doc. 15.) The Clerk of Court is respectfully directed to terminate all open gavels.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 17336586

Footnotes

1   The facts set forth herein are taken from allegations in the Complaint, (Doc. 1 ("Compl.")), McCormack's motion seeking appointment as lead plaintiff and approval of his selection of lead counsel, (Doc. 20), McCormack's memorandum of law in support, (Doc. 21 ("Pl.'s Mem.")), and McCormack's affidavit and exhibits in support, (Doc. 22 ("Laughlin Decl.")). However, my reference to these allegations should be not construed as a finding as to their veracity, and I make no such findings.

2   "Dingdong purports to be a leading and the fastest growing on-demand e-commerce company in China." (Compl. ¶ 3.)

3   Where exhibit pages are unnumbered, page numbers reflect the numbers assigned by ECF.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.